# Illinois Official Reports

## Supreme Court

---

### *People v. McLaurin*, 2020 IL 124563

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JASPER McLAURIN, Appellee. |
| Docket No. | 124563 |
| Filed | March 19, 2020 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Thaddeus L. Wilson, Judge, presiding. |
| Judgment | Appellate court judgment reversed. Circuit court judgment affirmed. |
| Counsel on Appeal | Kwame Raoul, Attorney General, of Springfield (Jane Elinor Notz, Solicitor General, and Michael M. Glick and Evan B. Elsner, Assistant Attorneys General, of Chicago, of counsel), for the People. <br><br> Steven A. Greenberg and Nicholas Burris, of Greenberg Trial Lawyers, of Chicago, for appellee. |

Justices          JUSTICE THEIS delivered the judgment of the court, with opinion.
Chief Justice Anne M. Burke and Justices Kilbride, Garman, Karmeier, and Neville concurred in the judgment and opinion.
Justice Michael J. Burke took no part in the decision.

**OPINION**

¶ 1      This appeal arises from defendant Jasper McLaurin's conviction of being an armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2014)), following a bench trial in the circuit court of Cook County. The appellate court reversed defendant's conviction, holding that the evidence was insufficient to prove that he possessed a firearm as defined by the Criminal Code of 2012 (*id.* § 2-7.5; 430 ILCS 65/1.1 (West 2014)), an element of the convicted offense. 2018 IL App (1st) 170258, ¶ 31. For the reasons that follow, we reverse the appellate court judgment and affirm defendant's conviction.

¶ 2                              BACKGROUND

¶ 3      In June 2014, defendant was charged with being an armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2014)), unlawful use of a weapon by a felon (*id.* § 24-1.1(a)), and aggravated unlawful use of a weapon (*id.* § 24-1.6). A bench trial ensued in September 2016.

¶ 4      Chicago police sergeant Nicheloe Fraction testified that on May 25, 2014, around 10:30 a.m., she was sitting alone in an unmarked police vehicle, conducting surveillance unrelated to defendant of an apartment building at 1351 South Kildare Avenue. Fraction observed defendant leave the building "carrying a silver handgun." She was approximately 50 feet away from him, and nothing obstructed her view. Defendant crossed the street and entered the rear of a white van, which proceeded to drive away. Calling for backup, Fraction followed the van and never lost sight of the vehicle. Approximately a block and a half later, the van was stopped by police.

¶ 5      Defendant and two other men were ordered out of the vehicle. Fraction was parked on the driver's side of the van and did not see them as they exited. She identified defendant as "the gentleman I saw carrying the handgun into the rear passenger side of the van." Shortly thereafter, Chicago police officer Jesse Rodriguez asked Fraction to identify a handgun that had been recovered by police at the scene. At trial, she described the item as "the same color [and] size of the handgun I saw the gentleman enter the van with." Fraction further testified that, during her 12 years of experience as a police officer, she had worked with handguns, was familiar with them, and carried one herself.

¶ 6      On cross-examination, Fraction testified that she did not observe anyone remove an object from the van. She further testified that she did not submit the gun for fingerprint analysis and was unaware if such testing had been performed. She testified that when she observed defendant leaving the apartment building he was holding the gun "in a grip that the barrel was coming out the one side and the handle was on the other side." Approximately 20 minutes after the officers transported defendant to the police station, she was asked there to identify the gun,

which she did. She described the gun as the same size and color as what she saw in defendant's hand.

¶ 7 Rodriguez testified that he was among the police officers who stopped the van. Like Fraction, Rodriguez stopped his vehicle on the driver's side of the van. The police ordered the three men to exit. Defendant got out through double doors that opened in the middle of the passenger's side. Fraction then confirmed to police that the correct vehicle had been stopped and provided Rodriguez a description of the weapon as a "chrome gun."

¶ 8 The officers patted down the three men and searched the vehicle. They did not find a gun. While standing on the driver's side of the van, Rodriguez looked underneath the vehicle and saw a 9-millimeter chrome handgun on the ground. The gun was located underneath the van, almost in the middle, near the rear passenger's side. Rodriguez partially crawled underneath the van and retrieved the gun. It was loaded. He cleared it by removing the magazine and the bullet from the chamber. Rodriguez placed the handgun in a bag and inventoried it.[1] The gun was not offered into evidence at trial.

¶ 9 On cross-examination, Rodriguez acknowledged that he did not see anyone place or throw anything underneath the vehicle. He testified that he recovered the gun less than five minutes after the van was stopped. Prior to recovering the weapon, Rodriguez called for an evidence technician to come to the scene, but none was available. He did not request that the gun be tested for fingerprints.

¶ 10 It was stipulated that defendant was on mandatory supervised release at the time of this offense and that he had never been issued a Firearm Owners Identification Card. It was further stipulated that defendant had a 2011 conviction for unlawful use of a weapon by a felon and a 2006 conviction for aggravated battery with a firearm.

¶ 11 At the completion of the State's case-in-chief, defendant moved for a directed finding. He argued that no officer had seen any of the doors of the van open, nor did any of them see an object being thrown underneath the van. Defendant also argued that Fraction could only provide the color and size of the gun but no further details about the weapon.

¶ 12 The trial court denied the motion.[2] The trial court stated that there were many possibilities as to how the gun ended up underneath the van, including a hatch in the middle or back of the van, or someone having kicked it there. The trial court further found that, while "recovering a gun would *** assist in terms of more credibility with respect to the evidence and the eyewitness testimony," it was Fraction's observations that were important. The trial court stated that "[the] bottom line is it's based on what the officer saw at the time that she saw the defendant pas[s] by her, and she sa[id] *** she saw the defendant with a gun."

¶ 13 Defendant did not testify or present any witnesses.

¶ 14 In finding defendant guilty of the charged offenses, the trial court highlighted Fraction's testimony that she saw "the defendant in plain daylight come out of a building [and] walk near her vehicle holding a firearm." Additionally, the court noted that Fraction "testifie[d] clearly

[1]The inventory sheet contained in the record indicates that police recovered a silver 9-millimeter handgun, a 9-millimeter magazine, and six live 9-millimeter shells.

[2]The trial court denied defendant's motion for a directed finding on all counts except counts VIII and X. Those two counts had charged defendant with aggravated unlawful use of a weapon without a concealed carry license.

and plainly and without impeachment that she saw a firearm, and that the defendant was the person holding that firearm." The trial court also noted that, as a police officer, Fraction was "familiar with firearms, works with firearms, [and is] trained with firearms." The court determined that her testimony as to "the way that the defendant [wa]s holding the firearm \*\*\* [wa]s consistent with not being able to say exactly what type of firearm because of the way the defendant's hand was in the middle of [it]."

¶ 15  The trial court considered Rodriguez's testimony and stated that, after the police stopped the van, Rodriguez "look[ed] under the vehicle \*\*\* close to the door area where the defendant exited out of, and only the defendant, [and] s[aw] a weapon that matche[d] the description of size and color given by Officer Fraction." The trial court also recognized Rodriguez's testimony that "the weapon was fully loaded and had to be unloaded by the officer when it was recovered." The trial court found that "the unequivocal testimony in this case is that the defendant was seen on the street carrying a firearm."

¶ 16  The trial court merged all of the counts into the armed habitual criminal offense and sentenced defendant to seven years' imprisonment.

¶ 17  The appellate court reversed defendant's conviction and sentence and entered a judgment of acquittal. 2018 IL App (1st) 170258, ¶ 31. The appellate court concluded that the State "failed to meet its burden to prove beyond a reasonable doubt [the] possessory firearm offenses where there was no evidence that the item observed in the defendant's possession" qualified as a firearm "as defined by the statute." *Id.* ¶ 27. The appellate court found that Fraction's testimony that she observed defendant in possession of an item that she believed to be a firearm, standing alone, was not sufficient to sustain defendant's conviction. *Id.* ¶ 28. The appellate court reasoned that in the case of possessory firearm offenses the item possessed cannot be inferred to be a firearm as defined by statute from circumstantial evidence. *Id.* ¶ 24.

¶ 18  Justice Mikva disagreed with the majority's holding "that the evidence needed to prove the illegal possession of a firearm is somehow different than the evidence needed to prove that a defendant possessed a firearm during a robbery." *Id.* ¶ 34 (Mikva, J., specially concurring). She believed that, in both situations, circumstantial evidence, if strong enough, may be relied upon to prove the necessary fact that what the defendant possessed was a firearm as defined by statute. *Id.* She concurred with the majority, however, that the evidence in this case did not establish defendant's guilt beyond a reasonable doubt. *Id.* ¶ 35.

¶ 19  This court allowed the State's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. July 1, 2018).

¶ 20                                                    ANALYSIS

¶ 21  The issue before us is whether the State presented sufficient evidence of defendant's possession of a firearm to sustain his conviction.

¶ 22  The due process clause of the fourteenth amendment to the United States Constitution requires that a defendant may not be convicted " 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.' " *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004) (quoting *In re Winship*, 397 U.S. 358, 364 (1970)). When a court reviews a challenge to the sufficiency of the evidence, the question is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

(Emphasis in original.) *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This court has adopted the *Jackson* formulation of the standard of review for claims that the evidence was insufficient to sustain a conviction. *Cunningham*, 212 Ill. 2d at 278-79. The *Jackson* standard applies in all criminal cases, regardless of the nature of the evidence. *Id.* at 279. This standard of review "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. In reviewing the evidence, this court will not retry the defendant, nor will we substitute our judgment for that of the trier of fact. *People v. Evans*, 209 Ill. 2d 194, 209 (2004).

¶ 23　　A person commits the offense of being an armed habitual criminal, in pertinent part, when "he *** possesses *** any firearm after having been convicted a total of 2 or more times" of certain enumerated offenses.[3] See 720 ILCS 5/24-1.7(a) (West 2014). For purposes of this offense, a firearm is defined in section 1.1 of the Firearm Owners Identification Card Act (FOID Act), in pertinent part, as "any device, by whatever name known, which is designed to expel a projectile or projectiles by the action of an explosion, expansion of gas or escape of gas." 430 ILCS 65/1.1 (West 2014); see also 720 ILCS 5/2-7.5 (West 2014). This provision of the FOID Act specifically excludes, among other items, any pneumatic gun, spring gun, paint ball gun, or BB gun. See 430 ILCS 65/1.1 (West 2014).

¶ 24　　The State contends that the appellate court's decision below conflicts with *People v. Washington*, 2012 IL 107993, and *People v. Wright*, 2017 IL 119561, by erroneously holding that a defendant's criminal possession of a firearm could not be proven by eyewitness testimony. Defendant argues that the appellate court was correct, drawing our attention to *People v. Ross*, 229 Ill. 2d 255 (2008), in support. He argues, consistently with *Ross*, that Fraction's observation of him was too speculative and provided no explanation for why she believed the object he was holding met the statutory definition of a firearm.

¶ 25　　We first turn to *Washington*. There, this court considered whether the State presented sufficient evidence of a dangerous weapon to prove the defendant guilty of armed robbery, aggravated kidnapping, and aggravated vehicular hijacking. *Washington*, 2012 IL 107993, ¶ 1. The State had to prove that defendant committed the offenses " 'while armed with a dangerous weapon.' " *Id.* ¶ 9. The jury found the defendant guilty of the charges. *Id.* ¶ 21. On appeal, he argued that the State failed to prove beyond a reasonable doubt that he was armed with a dangerous weapon because no weapon was recovered or introduced into evidence and because no testimony was provided as to the size, weight, or metallic nature of the weapon. *Id.* ¶ 24. The appellate court agreed that the State did not meet its burden of proof and reversed his conviction. *Id.* ¶ 25.

¶ 26　　In reversing the appellate court's decision, we relied on the victim's testimony that the defendant had pointed a gun at him, forced him into a truck, and then held a gun to his head while he sat between the defendant and his accomplice. *Id.* ¶ 35. The victim also testified that the defendant pointed the gun at him when he was later forced into the cargo area of the truck. *Id.* This court found that the evidence established that the victim, for several minutes, had an unobstructed view of the weapon used during the commission of the crime and that he testified

---

[3]In 2011, defendant was convicted of unlawful use of a weapon by a felon (No. 10-CR-1284101 (Cir. Ct. Cook County)) and in 2006 of aggravated battery with a firearm (No. 05-CR-237201 (Cir. Ct. Cook County)).

that it was a gun. *Id.* Given the victim's "unequivocal testimony and the circumstances under which he was able to view the gun, the jury could have reasonably inferred that defendant possessed a real gun." *Id.* ¶ 36.

¶ 27 In *Ross*, similar to *Washington*, we considered whether the evidence was sufficient to prove that the gun used by the defendant was a dangerous weapon. *Ross*, 229 Ill. 2d at 272. The arresting officer in *Ross* drove the victim back to where the crime had occurred. *Id.* at 258. The victim spotted the defendant, who was then taken into custody by police. *Id.* The arresting officer testified that, as he approached the defendant, he saw him throw some items into a bush. *Id.* The police retrieved the gun, though it was not offered into evidence. *Id.* The officer, however, described the gun as a " '4.5 BB caliber gun with a three inch barrel.' " *Id.* The inventory sheet in the record listed the gun consistently with the officer's testimony. *Id.* The victim described the gun as " 'a black, very portable gun,' " which was " 'small' and 'something you can conceal.' " *Id.*

¶ 28 This court in *Ross* specifically acknowledged that "our cases conclude that the trier of fact may make an inference of dangerousness based upon the evidence." *Id.* at 276. The court concluded, however, that the evidence presented at the defendant's bench trial was insufficient to support an inference that the "gun" the defendant possessed when he committed the robbery was a dangerous weapon. *Id.* at 277. The evidence showed that the "gun" was actually a small BB gun with a three-inch barrel. *Id.* at 276-77. Moreover, there was no evidence that the gun was either loaded or brandished as a bludgeon, and there was no evidence regarding its weight or composition. *Id.* at 277. Therefore, we found that the evidence precluded a finding that the "gun" used by the defendant was a dangerous weapon. *Id.*

¶ 29 Most recently, in *Wright*, the defendant was convicted under an accountability theory of armed robbery with a firearm in connection with a robbery at a restaurant. *Wright*, 2017 IL 119561, ¶ 71. We were asked in the defendant's cross-appeal to assess the sufficiency of the evidence to prove that the codefendant possessed a firearm, as defined in the FOID Act, during the robbery. *Id.* ¶ 76. This court highlighted our decision in *Washington* where we relied on the testimony of a single eyewitness and concluded that a rational trier of fact could infer from the testimony that the defendant possessed a " 'real gun.' " *Id.* We found our disposition in *Wright* was controlled by the same rationale as in *Washington*. *Id.*

¶ 30 In contrast to *Ross*, we recognized in *Wright* that one of the victims testified at trial that the codefendant told him " 'this is a robbery' " and lifted his hoodie to reveal what " 'looked like a black automatic, black gun.' " *Id.* Based upon his experience with firing such guns, the victim thought it was a semiautomatic. *Id.* He further testified that while walking toward his office he " 'felt something sharp in [his] back,' " which felt like the barrel of a gun. *Id.* On direct questioning by defendant, the victim testified that he was " '100% sure' " that the weapon the codefendant displayed was an " 'actual firearm.' " *Id.* Another victim of the crime at the restaurant also testified that the codefendant told her she was being robbed and that she saw the handle of a gun in the waistband of his pants. *Id.* Additionally, a third victim testified that he had seen guns before and believed the codefendant's gun was a " '9 millimeter pistol.' " *Id.* This court held, viewing this evidence in the light most favorable to the State, that it was not so unreasonable, improbable, or unsatisfactory that no rational trier of fact could have found that codefendant was armed with a firearm during the commission of the robbery. *Id.* ¶ 77.

¶ 31    In *Wright*, as in this case, the statutory elements of the charged offense, armed robbery with a firearm, included that the "firearm" meet the FOID Act's definition. In other words, the possessory offense here includes that same statutory "firearm" element and definition. The State is correct that, because the statutory element is the same and the burden of proof is the same, the evidence required to prove that element is identical for both offenses. Accordingly, the appellate majority below erred by holding to the contrary. See 2018 IL App (1st) 170258, ¶ 24.

¶ 32    We recognize the evidence in this case is not overwhelming. The State took a risk by choosing not to introduce into evidence the gun that Rodriguez testified was recovered at the scene and inventoried by police. Based upon our standard of review, however, the question before us is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *Jackson*, 443 U.S. at 319. The answer to that question is yes.

¶ 33    In contrast to *Ross* where the evidence showed that the "gun" was actually a small BB gun, Fraction's unimpeached testimony was that she observed defendant exit the apartment building "carrying a silver handgun." She was approximately 50 feet away from defendant, and nothing was obstructing her view. Fraction was conducting surveillance unrelated to defendant at the time, immediately called for backup after observing defendant with the gun, and followed the van. Rodriguez testified that Fraction confirmed that police had stopped the correct vehicle and that defendant was the person she had seen enter the van with a chrome gun. Shortly thereafter, Rodriguez looked underneath the van and recovered a 9-millimeter chrome handgun. It was loaded with a bullet in the chamber.

¶ 34    Fraction further testified that, a short time later, she was asked to identify the gun found by police. She testified that it was the same color and size as the gun she saw in defendant's hand when he entered the van. During her 12 years of experience as a police officer, Fraction had worked with handguns, carried one herself, and was familiar with them.

¶ 35    Defendant argues that, while Fraction testified that she observed him exit the apartment building carrying a silver handgun, she was unable to describe the item in any meaningful way and could not provide any detail, including whether it was a semiautomatic or a revolver. Defendant contends that the evidence simply consisted of Fraction's testimony that she thought she saw a chrome item in defendant's hand that seemed to be a firearm. Consistent with our instruction in *Washington* and *Wright*, however, a rational trier of fact could infer from the testimony presented in this case that defendant possessed a firearm as defined by the FOID Act.

¶ 36    In finding defendant guilty, the trial court highlighted that Fraction saw defendant "in plain daylight come out of a building [and] walk near her vehicle holding a firearm." The court noted that she testified "clearly and plainly and without impeachment that she saw a firearm, and that the defendant was the person holding that firearm." The court determined that her testimony as to the way that defendant was holding the firearm was "consistent with not being able to say exactly what type of firearm because of the way the defendant's hand was in the middle of [it]." The court emphasized that, as a police officer, Fraction was "familiar with firearms, works with firearms, [and was] trained with firearms."

¶ 37    The trial court also relied upon Rodriguez's testimony that police stopped the van that Fraction observed defendant enter, that Rodriguez looked under the vehicle close to the door where defendant exited, and that he saw a weapon that matched the description of the size and color given by Fraction. In finding defendant guilty, the trial court also emphasized Rodriguez's testimony that the weapon recovered by police was fully loaded and had to be unloaded by the officer when it was recovered.

¶ 38    Viewing this evidence, as we must, in a light most favorable to the State, it was not so unreasonable, improbable, or unsatisfactory that no rational trier of fact could have found beyond a reasonable doubt that defendant possessed a firearm as defined by the FOID Act.

¶ 39                                    CONCLUSION

¶ 40    Accordingly, we reverse the appellate court's judgment of acquittal and affirm the judgment of the trial court.

¶ 41    Appellate court judgment reversed.

¶ 42    Circuit court judgment affirmed.

¶ 43    JUSTICE MICHAEL J. BURKE took no part in the consideration or decision of this case.