2021 IL App (1st) 182404-U

No. 1-18-2404

Order filed June 17, 2021

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 CR 17039 |
| | ) | |
| TERRELL DAMPIER, | ) | Honorable |
| | ) | Michele M. Pitman, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE MARTIN delivered the judgment of the court.
Presiding Justice Gordon and Justice Reyes concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Defendant's conviction for armed robbery is affirmed over his contention there was insufficient evidence he possessed a firearm.

¶ 2    Following a bench trial, defendant Terrell Dampier was found guilty of armed robbery with

a firearm (720 ILCS 5/18-1(a)(2) (West 2014)) and sentenced to 25 years in the Illinois Department

of Corrections. On appeal, Dampier contends that his conviction should be reduced to robbery

because the State failed to prove beyond a reasonable doubt that he possessed a firearm. We affirm.[1]

¶ 3                                    I. JURISDICTION

¶ 4      The trial court sentenced Dampier on November 8, 2018, and on November 9, 2018, Dampier filed a timely notice of appeal. Accordingly, this court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1980, art. VI, §6) and Illinois Supreme Court Rule 603 (eff. Feb. 6, 2013) and Rule 606 (eff. July 1, 2017), governing appeals from a final judgment of conviction in a criminal case.

¶ 5                                    II. BACKGROUND

¶ 6      Prior to trial, the State sought leave to introduce proof of other crimes to establish Dampier's knowledge, motive, intent, consciousness of guilt, and identity. Specifically, the motion alleged that the vehicle used in the instant offense was involved in two other offenses and a "high speed chase." On September 23, 2015, Dampier, who was accompanied by a man with a firearm, approached Imoni Pierson, demanded the keys to her Nissan, took her cell phone and bank card, and drove away in the vehicle with his companion. Also on September 23, 2015, South Holland police detective Michelle Malone contacted a phone number during an investigation, arranged to buy pills, and received a photograph of Dampier. Dampier arrived at the meeting spot in the Nissan and then fled. In the instant offense, which occurred on September 25, 2015, Dampier, who was driving the Nissan, approached Chadwick Hupp, pointed a firearm at him, and removed items from

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

Hupp's pockets. Later that day, a police officer observed Dampier driving the Nissan and chased the vehicle, resulting in Dampier's arrest.

¶ 7       At the hearing on the motion, the State argued that the two other offenses and the chase were close in time, involved similar evidence and witnesses, and were connected by the Nissan. Trial counsel responded that it would be prejudicial to classify the events as "other crimes" when they were "essentially *** part of one incidence *** over the course of a day and a half." The court granted the State's motion, finding that the other crimes evidence was relevant and more probative than prejudicial.

¶ 8       At trial, Hupp testified that he was walking his dog around 7 a.m. on September 25, 2015, when he saw a small silver SUV at the end of an alley. The vehicle stopped, turned, and drove toward him. Hupp made eye contact with the driver as the vehicle passed. After about 20 feet, he turned around and saw the vehicle's driver pointing an automatic firearm at him. The man said, "you know what this is" and "put your hands up." Hupp, who was familiar with firearms, identified Dampier in court as the person holding the weapon. Hupp raised his hands and followed Dampier's instructions to lay down. Dampier approached, removed items from Hupp's pockets, including his cell phone, wallet, keys, cigarettes, and cash, and left. Hupp contacted police and described Dampier and the vehicle. He later identified Dampier in a lineup.

¶ 9       During cross-examination, Hupp testified that the vehicle's windows were tinted and "frosty," such that he could not tell if Dampier was alone. He did not see anyone else and denied telling Dolton police detective Major Coleman he saw another person. Dampier was 20 feet away when he held the firearm. The firearm was not discharged and did not touch Hupp's skin.

¶ 10 Coleman testified that he received an alert that two offenders with firearms robbed Hupp and then fled in a grey Nissan SUV. He then observed a vehicle matching this description at a gas station. Dampier was in the driver's seat and another man was in the front passenger seat. Coleman pursued the vehicle and communicated his location to other agencies. When Dampier entered an expressway at an accelerated speed, Coleman discontinued pursuit. The vehicle was later located in Harvey, and after a search, Dampier was located in a backyard.

¶ 11 During cross-examination, Coleman testified that he received a description of two male blacks with a dark-finish firearm. The man with the firearm had a medium complexion with a short haircut and the other man had a darker complexion. During Coleman's first conversation with Hupp, Hupp described the offender as having a medium complexion with short hair. There was another man with a darker complexion in the vehicle, but Hupp's focus was on the man with the firearm. When Coleman later saw the vehicle matching Hupp's description, it contained two men. No firearm was recovered. During redirect, Coleman testified that Hupp indicated that one person robbed him and he had no contact with the second man.

¶ 12 Pierson testified that when she returned home around 1 a.m. on September 23, 2015, with her infant daughter, she saw two men standing by a building in her apartment complex. She parked her Nissan and exited. At this point, the men were "immediately" behind the vehicle. They approached and told her to "give them what I had." One man came to the front of the vehicle, brandished an automatic firearm, and said, "give me everything." She could see the butt and "top part" of the firearm. The second man stood by the open passenger door near Pierson's infant. She identified Dampier in court as the second man. Dampier took her keys and iPhone and said she would get her phone back when she got her vehicle back. Pierson asked for her house keys,

received them, and removed her infant from the vehicle. Dampier entered the driver's side while the man with the firearm entered the passenger seat, and Dampier drove away. Pierson contacted police and later identified Dampier in a lineup. During cross-examination, Pierson acknowledged that Dampier did not have a firearm.

¶ 13    Malone testified that on September 23, 2015, she spoke with a man on the phone as part of an investigation. The man, whose nickname was "J-Rock," said his "real name" was Terrell and they arranged to meet at a gas station that afternoon. There, a grey Nissan pulled beside Malone's vehicle. Dampier was the driver. When Dampier looked in a sidemirror and saw officers approaching, he exited the parking lot. Officers pursued, but the chase was terminated for safety reasons. On September 25, 2015, Malone went to Harvey where she identified Dampier and the vehicle. The following day, Malone spoke to Dampier at a police station and asked why he "ran." Dampier stated that Malone had a different hairstyle than a photograph she sent, her sunglasses indicated she was a police officer, and he saw officers in his rearview mirror.

¶ 14    The State entered a stipulation that Dampier could not be excluded as the source of DNA recovered from the Nissan.

¶ 15    During closing argument, the defense noted that Hupp saw the alleged firearm from 20 feet away at 7 a.m. and did not feel it against his skin or hear it fired. Trial counsel therefore concluded there was insufficient evidence of an "active, actual working firearm." The State replied that one could see a firearm from 20 feet. Moreover, Dampier approached Hupp while holding the firearm, and Hupp testified that he was familiar with firearms and identified the firearm as an automatic.

¶ 16    In finding Dampier guilty of armed robbery with a firearm, the court that noted that Hupp, who had experience with firearms, testified that Dampier pointed an automatic firearm at him and

said, "You know what this is." The court concluded that Hupp was ordered to the ground at "gunpoint."

¶ 17 Dampier filed a motion for a new trial alleging that Hupp's testimony was insufficient evidence that the object at issue was actually a firearm. In denying the motion, the trial court noted that Hupp testified that Dampier pointed an automatic weapon at him. The court further noted that although Pierson testified that Dampier was not armed during the carjacking, she described the firearm held by the other man as an automatic weapon—that is, the same type of firearm described by Hupp. The trial court then sentenced Dampier to 25 years in prison.

¶ 18 On appeal, Dampier contends that because no firearm was recovered in this case, Hupp's "vague description" of the object used during the robbery was insufficient to prove beyond a reasonable doubt he possessed a firearm.

¶ 19 When reviewing a challenge to the sufficiency of the evidence, "the question is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. McLaurin*, 2020 IL 124563, ¶ 22 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The trier of fact is responsible for resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from the facts presented at trial. *Id.* "In reviewing the evidence, this court will not retry the defendant, nor will we substitute our judgment for that of the trier of fact." *Id.* A defendant's conviction will be reversed only when the evidence is so unreasonable, improbable, or unsatisfactory that it created a reasonable doubt of his guilt. *People v. Newton*, 2018 IL 122958, ¶ 24.

¶ 20    Here, Dampier was charged with armed robbery in that he took "property *** from the person or presence of another by the use of force or by threatening imminent use of force" (720 ILCS 5/18-1(a) (West 2014)) and that he "carrie[d] on or about his *** person or [was] otherwise armed with a firearm" (720 ILCS 5/18-2(a)(2) (West 2014)). For purposes of this statute, a firearm, in relevant part, is defined in section 1.1 of the Firearm Owners Identification Card (FOID) Act as "any device, by whatever name known, which is designed to expel a projectile or projectiles by the action of an explosion, expansion of gas or escape of gas," but specifically excluding, among other items, any pneumatic gun, spring gun, paint ball gun, or BB gun. 430 ILCS 65/1.1 (West 2014); 720 ILCS 5/2-7.5 (West 2014). Here, Dampier's sole argument on appeal is that the State failed to prove that he possessed a firearm within the meaning of the statute.

¶ 21    In the case at bar, a rational trier of fact could have found that Dampier possessed a firearm when Hupp, who was familiar with firearms, testified that Dampier pointed an automatic firearm at him from about 20 feet away. Although the object in question was not entered into evidence at trial, "courts have consistently held that eyewitness testimony that the offender possessed a firearm, combined with circumstances under which the witness was able to view the weapon, is sufficient to allow a reasonable inference that the weapon was actually a firearm." *People v. Jackson*, 2016 IL App (1st) 141448, ¶ 15. "Consequently, the State need not present a firearm in order for the trier of fact to find the defendant possessed one." *Id.*; see also *People v. Fields*, 2017 IL App (1st) 110311-B, ¶ 36 (the State is not required to "prove the gun is a firearm by direct or physical evidence, [because the] unequivocal testimony of a witness that the defendant held a gun is circumstantial evidence sufficient to establish that a defendant is armed"). Taking Hupp's

testimony in the light most favorable to the State, we cannot say that no rational trier of fact could have found that Dampier possessed a firearm. *McLaurin*, 2020 IL 124563, ¶ 22.

¶ 22 Dampier, however, relies in part on *People v. McLaurin*, 2018 IL App (1st) 170258, to argue that Hupp's testimony was insufficient to support the inference that the object at issue was a "firearm" as defined by statute. However, as noted by the State and acknowledged by Dampier, *McLaurin* was recently reversed by our supreme court. See *McLaurin*, 2020 IL 124563, ¶ 1. In *McLaurin*, our supreme court considered whether the State presented sufficient evidence that the defendant possessed a firearm, as defined by the FOID Card Act, to sustain his armed habitual criminal conviction. See *Id*. ¶¶ 21-38.

¶ 23 In that case, a police officer testified that she saw the defendant exit an apartment building " 'carrying a silver handgun' " and enter a van. *Id*. ¶ 4. The officer was approximately 50 feet away and her view was not obstructed. *Id*. The van was subsequently curbed by other officers. *Id*. Defendant and two other men exited, and a firearm was recovered. *Id*. ¶ 5. Shortly thereafter, the officer was asked to identify the firearm at a police station. *Id*. ¶¶ 5-6. She identified the recovered firearm as " 'the same color [and] size' " as the firearm she saw in the defendant's hand. *Id.* ¶ 5. The officer further testified that during her 12 years as a police officer, she had worked with firearms and was familiar with them. *Id.* A second officer testified that a "9-millimeter chrome handgun" was recovered from underneath the van. *Id*. ¶ 8. The firearm itself was not offered into evidence. *Id.* The defendant was found guilty of being an armed habitual criminal and sentenced to seven years in prison. *Id*. ¶ 16.

¶ 24 The appellate court reversed, determining that the officer's testimony that she observed the defendant with an object she believed was a firearm was insufficient to sustain the conviction.

*People v. McLaurin*, 2018 IL App (1st) 170258, ¶¶ 27-28. The court explained that in a firearm possession case, "the item possessed cannot be inferred from circumstantial evidence but must be proven beyond a reasonable doubt to be a firearm as defined by the statute." *Id.* ¶ 24. The supreme court granted the State's petition for leave to appeal.

¶ 25 In analyzing the issue, our supreme court relied on its prior holdings in *People v. Washington*, 2012 IL 107993, and *People v. Wright*, 2017 IL 119561. In *Washington*, our supreme court considered whether the State presented sufficient evidence of a "dangerous weapon" to prove the defendant guilty of armed robbery, aggravated kidnaping, and aggravated vehicular hijacking when the weapon was not recovered and no testimony detailed the size, weight, or metallic nature of the weapon. *Washington*, 2012 IL 107993, ¶¶ 1, 24, 29. In affirming the defendant's convictions, our supreme court relied upon the victim's testimony that the defendant pointed a firearm at him, forced him into a truck, held the firearm to his head, and again pointed the firearm at him while later forcing him into the cargo area of the truck. *Id.* ¶ 35. The court noted that the victim, who had an unobstructed view of the weapon for several minutes, testified that it was a firearm and rejected the argument that "it could not be known for sure whether the gun was real or a toy because no gun was ever recovered." *Id.* ¶¶ 35-36. Considering the victim's "unequivocal testimony and the circumstances under which he was able to view the gun, the jury could have reasonably inferred that defendant possessed a real gun." *Id.* ¶ 36.

¶ 26 Similarly, in *Wright*, our supreme court considered whether there was sufficient evidence that a codefendant was armed with a "firearm," as defined in the FOID Card Act, so as to support the defendant's armed robbery conviction. *Wright*, 2017 IL 119561, ¶¶ 69-77. At trial, the victim testified that the codefendant said, " ' "[t]his is a robbery" ' " and lifted a hoodie to reveal what

" 'looked like a black automatic, black gun.' " *Id.* ¶ 9. The victim further testified that he thought the firearm was semiautomatic, had experience firing such weapons, and that during the incident he " 'felt something sharp in [his] back,' " which he thought was a firearm. *Id.* ¶¶ 9-10. The victim was " '100% sure' " the item displayed was an " 'actual firearm.' " *Id.* ¶ 29. A second witness testified she saw the handle of a firearm in the codefendant's waistband and a third witness testified that he saw the handle, had seen firearms before, and believed the firearm was a " '9[-]millimeter pistol.' " *Id.* ¶ 12. In finding that the evidence was sufficient to prove that the codefendant was armed with a firearm during the robbery, the court stated that its decision was controlled by the rationale expressed in *Washington*, where it "relied on the testimony of a single witness and concluded that a rational trier of fact could infer from the testimony that the defendant possessed a 'real gun.' " *Id.* ¶ 76.

¶ 27    In *McLaurin*, the supreme court relied on both *Washington* and *Wright* to find that although the evidence was "not overwhelming" and no firearm was introduced into evidence, "a rational trier of fact could infer from the testimony presented in this case that [the] defendant possessed a firearm as defined by the FOID Act." *McLaurin*, 2020 IL 124563, ¶¶ 32-35. The court noted that the officer testified she observed the defendant " 'carrying a silver handgun,' " was familiar with handguns, and identified the firearm recovered as being the same size and color as the firearm she observed in the defendant's hand. *Id.* ¶¶ 33-34. The court rejected the defendant's argument that the evidence was insufficient because it "simply consisted of [the officer's] testimony that she thought she saw a chrome item in defendant's hand that seemed to be a firearm" and did not provide details "including whether it was a semiautomatic or revolver." *Id.* ¶ 35.

¶ 28    Here, as in *McLaurin,* although no firearm was offered into evidence at trial, there was sufficient evidence that Dampier possessed a firearm when Hupp, who was familiar with firearms, testified that Dampier pointed an automatic weapon at him. Viewing this evidence in the light most favorable to the State, it was not so unreasonable, improbable, or unsatisfactory that no rational factfinder could have found beyond a reasonable doubt that Dampier possessed a firearm as defined by the FOID Card Act. See *McLaurin*, 2020 IL 124563, ¶ 38.

¶ 29    To the extent Dampier contends that the trial court improperly relied on Pierson's testimony that Dampier's companion had an automatic firearm during the carjacking to conclude that Dampier was armed with a firearm when he robbed Hupp, we disagree.

¶ 30    First, we note that Dampier does not challenge the admission of the other crimes evidence at trial to show motive, intent, and identity; rather, he argues Pierson's testimony was used for the improper inference that Dampier had a "propensity to carry firearms." When rendering its guilty findings, the trial court relied on Hupp's testimony to determine that he was forced to the ground at "gunpoint." It was in denying Dampier a new trial that the court noted that in addition to Hupp's testimony that Dampier pointed an automatic firearm at him, Pierson testified that when Dampier and his companion took her vehicle, the second man was armed with an automatic firearm. That said, the trial court found Hupp to be a credible witness, as evidenced by its finding, and our supreme court has repeatedly held that a single witness's testimony may be sufficient to show that a person was armed. See *Wright*, 2017 IL 119561, ¶¶ 76-77 (victim's testimony that codefendant displayed a firearm sufficient to support conviction for armed robbery); *Washington*, 2012 IL 107993, ¶¶ 35-36 (given the victim's "unequivocal testimony and the circumstances under which he was able to view the gun, the jury could have reasonably inferred that defendant possessed" a

firearm). Consequently, Dampier has not shown that the properly admitted other crimes evidence was used for an improper purpose, and the evidence taken in the light most favorable to the State shows that Dampier was armed with a firearm when he robbed Hupp.

¶ 31    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 32    Affirmed.