2021 IL App (1st) 190063-U

No. 1-19-0063

Order filed September 17, 2021

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 13807 |
| | ) | |
| ALLEN JAMES, | ) | Honorable |
| | ) | Lawrence E. Flood, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE PIERCE delivered the judgment of the court.
Justices Harris and Mikva concurred in the judgment.

**ORDER**

¶ 1     *Held*: Defendant's convictions for armed robbery, home invasion, and aggravated unlawful restraint are affirmed over his claims that the evidence was insufficient to establish his guilt because the State's witnesses were incredible and the evidence did not establish he used a firearm.

¶ 2     Following a bench trial, defendant Allen James was found guilty of residential burglary

(720 ILCS 5/19-3(a) (West 2014)) and two counts each of home invasion (720 ILCS 5/19-6(a)(3)

(West 2014)), armed robbery (720 ILCS 5/18-2(a)(2) (West 2014)), and aggravated unlawful

restraint (720 ILCS 5/10-3.1(a) (West 2014)), and sentenced to a total of 28 years' imprisonment. He appeals, arguing that the evidence was insufficient because the State's witnesses were incredible and no other evidence supported his guilt, and further alleges that even accepting the State's version of events, the evidence did not show that he possessed a firearm. We affirm.

¶ 3       Defendant was charged by indictment with two counts each of home invasion, armed robbery, and unlawful restraint, and one count of residential burglary, relating to an incident on July 22, 2015. The trial court tried defendant and co-offender Antoine Mahone in separate but simultaneous bench trials.[1]

¶ 4       At trial, Hahdessa Figgures testified that she lives with her two sons in an apartment on the 3800 block of West Grenshaw Street in Chicago, and operates a beautician business out of the apartment. Defendant is the father of her younger son. Figgures and defendant were in a relationship for 1½ years, but separated in February or March 2013. She saw and occasionally slept with defendant afterwards, but he did not live with Figgures in July 2015. Figgures's nieces, Yasmine Jackson and Iraca Weakly, stayed with Figgures in summer 2015 to assist with childcare. Only Figgures had a key to her apartment, and neither defendant nor Mahone had permission to enter the apartment on July 22, 2015.

¶ 5       That morning, Figgures left her apartment and did not return until July 23, around noon, at which time Jackson and Weakly informed her that something happened inside the apartment the previous day. Upon learning this, Figgures contacted Mahone and requested that he return $13,000, which was missing from her apartment. She also spoke to defendant in person on July 23, but he refused to return the money.

---

[1] Antoine Mahone is not a party to this appeal.

¶ 6    On cross-examination, Figgures testified that her apartment building has two doors before her apartment door, the front door to the building itself and another door in the foyer, which have separate locks. On July 21, 2015, defendant was inside her apartment with her permission. He occasionally slept there following their separation. Mahone had also been in the apartment that summer.

¶ 7    On the morning of July 22, Figgures followed defendant in her vehicle because she was angry with him. She hit defendant's vehicle with her vehicle that morning and was arrested. She initially denied that she was mad about defendant spending the night out and cheating on her, but after defense counsel asked whether she recalled telling detectives that she "was in a rage" because defendant engaged in that behavior, Figgures acknowledged she thought defendant was with another woman, and was enraged because he stayed out. After her arrest, Figgures spent the night in the police station, and her cousin, Jackson, and Weakly picked her up the next day. While at the station, Figgures said, "I'm so happy [defendant] didn't take my money," which prompted Jackson and Weakly to disclose the incident.

¶ 8    Figgures did not report the incident to the police at this time because Jackson and Weakly "feared for their [lives]." Instead, she drove to defendant's aunt's house, along with Jackson and Weakly, to ask for help retrieving Figgures's money. Defendant was not present. Figgures then drove to another location with Jackson and Weakly, and found defendant. On July 25, she called the police regarding the incident. Prior to July 22, 2015, she kept the $13,000 in the refrigerator, and no one besides Jackson, Weakly, and defendant knew that she had money in the apartment.

¶ 9    Jackson testified that on July 22, 2015, when she was 15 years old, she, Weakly, and Figgures's younger son were at Figgures's apartment. Defendant knocked on the door, and Weakly

answered it while Jackson sat on the couch. When Weakly opened the door, defendant "forced his way" inside with a black firearm in his hand. He was with another man, whom Jackson identified in court as Mahone.

¶ 10    Defendant "ransack[ed]" the house, looking for Figgures's money, while Mahone sat in a chair. Defendant looked in multiple rooms and the refrigerator, then pointed the firearm at Jackson's and Weakly's heads and threatened to shoot them if they did not reveal the money's location. Jackson retrieved the money from a suitcase in a bedroom and gave it to defendant because she was "afraid for [her] life." Jackson moved the money earlier in the day because Figgures called her and asked her to hide it. Defendant took the money and left with Mahone, and Jackson and Weakly went to a neighbor's home and called their cousin. Jackson did not call the police that day because she was afraid. Later that day, she and Weakly returned to the apartment and took photographs.

¶ 11    On cross-examination, Jackson testified that Figgures was not home on the morning of July 22, but at some point that day, Figgures called Jackson and told her to "move the money" from the refrigerator. Jackson spoke to a detective on July 25, but did not remember if she stated that she moved the money to the suitcase while defendant was inside the apartment. She told Figgures what happened on July 23, but not while at the police station. Neither Jackson nor Weakly called 911 during the incident, though Weakly had a cell phone.

¶ 12    Weakly, who was also a teenager at the time of the incident, testified that on July 22, she answered the door sometime between 11 a.m. and 2 p.m. Defendant forced the door opened and entered while holding a black firearm. She did not know in which hand defendant held the firearm. Mahone was with defendant. After searching the apartment, defendant came to the living room,

where Weakly and Jackson sat on a couch, "waved" the firearm at them, and asked "where is the money?" Jackson then retrieved the money from her suitcase and gave it to defendant, and he and Mahone left. Weakly and Jackson crossed the street to Figgures's friend's home and called their cousin. The State published photographs Weakly took of the apartment following the incident.[2]

¶ 13    On cross-examination, Weakly testified that as she opened the front door, defendant "burst in." She and Jackson discussed calling the police following the incident, but decided not to. After they picked up Figgures from the police station, Figgures drove around with Weakly and Jackson to find defendant.

¶ 14    Defendant entered a stipulation that if called, Chicago police officer Celio[3] would testify that he observed an "incident" between Figgures and defendant on July 22, 2015. Chicago police officer Chlebek[4] would testify that he spoke to Figgures, Weakly, and Jackson on July 25, 2015, in response to a burglary report.

¶ 15    Chicago police detective Becker[5] would testify that he interviewed Figgures, Weakly, and Jackson, but neither Figgures nor Weakly told Becker that they drove around looking for defendant after Figgures's release from the police station. Jackson told Becker that while defendant and Mahone were in the apartment, she hid the money in a suitcase. The parties further stipulated that in a videotaped statement on February 13, 2016, Figgures said she was "in a rage" against defendant on July 22 because he spent the "night out *** cheating" on her.

---

[2] These photographs do not appear in the record on appeal.

[3] Officer Celio's first name does not appear in the report of proceedings.

[4] Officer Chlebek's first name does not appear in the report of proceedings.

[5] Detective Becker's first name does not appear in the report of proceedings.

¶ 16    Following closing arguments, the court found defendant guilty on all counts. In so holding, the court found that Figgures, Jackson, and Weakly all testified credibly.

¶ 17    The court denied defendant's motion for a new trial. Following a hearing, the court sentenced him to six concurrent prison terms: 28 years for the armed robbery counts and 21 years for the home invasion counts, with each sentence including the 15-year firearm enhancement, and 3 years for each aggravated unlawful restraint count. The court merged residential burglary into the home invasion counts. In so holding, the court stated it was "clear" that defendant used a firearm during the incident. The court denied defendant's motion to reconsider sentence.

¶ 18    This court permitted defendant's late notice of appeal.

¶ 19    On appeal, defendant claims that the evidence at trial was insufficient because the State's witnesses were incredible, and even accepting their testimony, the evidence did not demonstrate that he used a firearm.

¶ 20    When reviewing the sufficiency of the evidence, the reviewing court construes the evidence in the light most favorable to the State and determines whether any rational factfinder could find the defendant guilty beyond a reasonable doubt. *People v. Eubanks*, 2019 IL 123525, ¶ 95. The reviewing court may not substitute its judgment for that of the factfinder regarding the weight of the evidence or witness credibility, and all reasonable inferences must be drawn in favor of the State. *People v. Hardman*, 2017 IL 121453, ¶ 37. The lower court's decision should not be reversed unless the evidence is "so unreasonable, improbable, or unsatisfactory" that it gives rise to reasonable doubt of the defendant's guilt. *People v. Newton*, 2018 IL 122958, ¶ 24. In making this determination, the reviewing court need not ignore inferences that arise naturally from the

evidence, or raise any theory of innocence to the level of reasonable doubt. *People v. Jackson*, 232 Ill. 2d 246, 281 (2009).

¶ 21    Defendant was convicted of armed robbery, home invasion, and aggravated unlawful restraint. To establish armed robbery, the State had to prove that defendant, while "armed with a firearm," knowingly took the property of another through force or the threat of imminent force. 720 ILCS 5/18-1, 2 (West 2014). To prove home invasion as charged, the State had to demonstrate that defendant, while armed with a firearm, entered another's dwelling without authority, while having reason to know the dwelling was occupied, and used force or threatened imminent force against another while inside. 720 ILCS 5/19-6(a)(3) (West 2014). Finally, to establish aggravated unlawful restraint, the State had to show that defendant used a deadly weapon while detaining another against her will. 720 ILCS 5/10-3 (West 2014).

¶ 22    Here, Jackson and Weakly both testified that defendant, along with Mahone, forced his way into Figgures's apartment while holding a black firearm. Figgures testified that defendant did not have authority to enter the apartment at the time, though he had been present the day before and the two slept together on occasion. Jackson and Weakly testified that defendant searched the apartment while the two sat on the couch, then aimed the firearm at their heads and threatened to shoot them unless they gave him Figgures's money. At this point, Jackson retrieved the money from her suitcase and gave it to defendant, who left with Mahone. Jackson and Weakly went to a neighbor's house and called their cousin, but did not call the police because they were afraid.

¶ 23    Figgures testified that the day prior to the incident, she was arrested for hitting defendant's vehicle with her vehicle. In a statement to the police, Figgures acknowledged she did this because she was in a "rage" at defendant for staying out all night and cheating on her. Jackson and Weakly

were present when she was released, and told her that defendant took her money. Nobody reported the incident to the police at this time. Instead, Figgures testified that she, Jackson, and Weakly drove around looking for defendant, eventually finding him, and he refused to return the money. Two days later, on July 25, 2015, Figgures reported the incident to the police, who spoke to Figgures, Jackson, and Weakly; those three later spoke to Becker. The parties stipulated that Becker would testify neither Figgures nor Weakly told him they drove around looking for defendant following Figgures's release from the police station. In finding defendant guilty, the trial court stated that it found Figgures, Jackson, and Weakly credible.

¶ 24    On this record, we find that the evidence was sufficient for a rational factfinder to find defendant guilty. This case hinged on the credibility of the State's witnesses, and the court explicitly stated that it found those witnesses credible. We may not substitute our judgment for that of the factfinder on matters of witness credibility. *Hardman*, 2017 IL 121453, ¶ 37. Figgures testified that defendant did not have permission to enter her apartment on July 22, 2015. Weakly and Jackson both testified that defendant pushed his way into the apartment while holding a firearm, pointed it at them while they were seated on a couch, threatened to shoot them if they did not hand over Figgures's money, and then took the money from Jackson and left. Based on this evidence, the State established the elements of armed robbery, home invasion, and aggravated unlawful restraint.

¶ 25    Defendant argues that no physical evidence linked him to the crimes, no money was recovered, and he never gave an inculpatory statement. But these arguments fail because it is well-established that the testimony of even a single eyewitness is sufficient, if credible, to support a

conviction, and the court here found the State's witnesses credible. See *People v. Charles*, 2018 IL App (1st) 153625, ¶ 25 (citing *People v. Gray*, 2017 IL 120958, ¶ 36).

¶ 26    Defendant also argues that no rational factfinder could have found the State's witnesses credible, pointing to Figgures's rage at him for staying out and his approved presence in the apartment the day before for the proposition that he had authority to enter the apartment on July 22, 2015. Defendant also notes that Jackson and Weakly did not call the police on July 22, and that Figgures, Jackson, and Weakly did not report the incident when they were at the police station on July 23, as evidence that their accounts are incredible. Defendant further emphasizes inconsistencies in their accounts, including when Jackson hid the money and whether Figgures drove with Jackson and Weakly to find defendant following her release from the police station.

¶ 27    We find that the State's witnesses' testimony was not so improbable that it entitles this court to substitute its judgment for that of the trial court regarding their credibility. Such an action is appropriate only where no reasonable person could possibly accept the witness's version of events. See *People v. Herman*, 407 Ill. App. 3d 688, 707 (2011) (testimony of witness rejected by reviewing court where inconsistencies "made it impossible for any fact finder reasonably to accept any part of it").

¶ 28    Here, however, Jackson and Weakly testified consistently with each other, and were not meaningfully impeached regarding their accounts of the incident itself. Additionally, Figgures acknowledged her "rage" at defendant on cross-examination, and the trial court was thus aware of this possible bias. Moreover, there was corroborating evidence from the photographs of Figgures's

apartment showing its condition after defendant searched for the money.[6] While other interpretations of the State's evidence, and the credibility of Figgures, Jackson, and Weakly, were possible, the State's witnesses' accounts were not so incredible or contradicted by other evidence that substitution of judgment is appropriate here.

¶ 29    We further find that the evidence was sufficient to establish defendant used a firearm. To show that an object is a "firearm," the evidence must show that the object is "any device *** which is designed to expel a projectile or projectiles by the action of an explosion, expansion of gas, or escape of gas." 430 ILCS 65/1.1 (West Supp. 2015); see also 720 ILCS 5/2-7.5 (West 2014). Jackson and Weakly both testified that defendant held a black firearm when he entered the apartment, which he later aimed at their heads and threatened to discharge at them. They were near defendant and had ample opportunity to observe the purported firearm. This evidence is sufficient to establish the firearm element of the relevant statutes. See *People v. McLaurin*, 2020 IL 124563, ¶¶ 32-38 (the evidence was sufficient to establish the defendant used a firearm where an officer eyewitness testified the defendant carried a "silver handgun," which she saw from 50 feet away, and a chrome firearm was later recovered from area of the defendant's arrest); *People v. Wright*, 2017 IL 119561, ¶ 71 (the evidence was sufficient to establish the defendant used a "real" firearm during an armed robbery based only on the testimony of eyewitnesses); *People v. Washington*, 2012 IL 107993, ¶ 36 (the evidence was sufficient to establish the defendant used a "real" firearm based on a witness' "unequivocal testimony and the circumstances under which he was able to view the" firearm).

---

[6] Because defendant did not include the photographs in the record on appeal, we must construe them against him. See *People v. Boston*, 2016 IL App (1st) 133497, ¶ 62.

¶ 30    Defendant argues that no evidence established that Jackson or Weakly were familiar with firearms, and thus the evidence was insufficient to show the object was not a look-alike. This argument fails because neither *McLaurin* nor *Wright* require a witness to have such experience. On this point, this court's decision in *Charles* is instructive. There, the victim's testimony that the defendant had a black firearm was sufficient to establish that the defendant used a firearm based only on the victim's opportunity to view the alleged firearm from close range, and the victim did not testify that she had any experience with firearms. *Charles*, 2018 IL App (1st) 153625, ¶¶ 3, 30. In affirming the defendant's conviction, we stated that the theory that the object could have been a look-alike constituted a theory of innocence that the factfinder need not raise to the level of reasonable doubt. *Id.* ¶ 30; see also *People v. Malone*, 2012 IL App (1st) 110517, ¶¶ 4, 51 (eyewitness testimony that a defendant had a firearm was sufficient, despite the witness testifying she had not previously seen a firearm). We further explained that "nothing in *Wright* suggests that familiarity with firearms and the ability to distinguish among various types of firearms is necessary to find a witness's testimony that a defendant possessed a firearm sufficient." *Charles*, 2018 IL App (1st) 153625, ¶ 29. This principle applies here, as the testimony of Jackson and Weakly could be found sufficient where they both testified unequivocally that defendant had a black firearm, and both had an extended opportunity to view it.

¶ 31    Based on the foregoing, defendant's convictions are affirmed.

¶ 32    Affirmed.