2022 IL App (1st) 211003-U

FIFTH DIVISION
March 18, 2022

No. 1-21-1003

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| *In re* Kejuan F., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Cook County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 19 JD 2003 |
| | ) | |
| Kejuan F., a Minor, | ) | Honorable |
| | ) | Linda Pauel, |
| Respondent-Appellant). | ) | Judge, presiding. |

_____

PRESIDING JUSTICE DELORT delivered the judgment of the court.
Justices Hoffman and Cunningham concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The evidence was sufficient to support the circuit court's delinquency findings for aggravated robbery, robbery, and theft, despite respondent's contention that the victim's identification was unreliable. The circuit court's delinquency findings for robbery and theft must be vacated pursuant to the one-act, one-crime rule. The record on appeal is inadequate to resolve respondent's claim of ineffective assistance of counsel.

¶ 2    Following a bench trial, respondent, Kejuan F., a minor, was found delinquent for the

offenses of aggravated robbery, robbery, and theft, and sentenced to 24 months of probation. On

appeal, respondent contends that the circuit court's delinquency findings should be reversed because the victim's testimony lacked credibility and the evidence did not show that proceeds of the robbery were recovered from respondent. Respondent further contends that the circuit court's delinquency findings for robbery and theft must be vacated pursuant to the one-act, one-crime rule. Additionally, respondent argues he was denied effective assistance by counsel's failure to request a continuance in order to present a material witness. We affirm in part and vacate in part.

¶ 3    On December 22, 2019, the State filed a petition for adjudication of wardship alleging that the 16-year-old respondent committed armed robbery, aggravated robbery, robbery, and theft. The charges arose out of a December 21, 2019 incident during which respondent, his cousin Keionta F., and another individual allegedly took property from Toluwalase Odunuga.[1]

¶ 4    As relevant here, the petition alleged that respondent committed aggravated robbery by indicating through his words or actions that he had a firearm and, by the use or threat of force, taking Odunuga's Android tablet and leather wallet containing miscellaneous "cards" and $40 (720 ILCS 5/18-1(b) (West 2018)). The petition further alleged that respondent committed robbery by taking the same property from Odunuga by the use or threat of force (720 ILCS 5/18-1(a) (West 2018)), and theft when he knowingly obtained or exerted unauthorized control of that property and intended to permanently deprive Odunuga of its use or benefit (720 ILCS 5/16-1(a)(1) (West 2018)).

¶ 5    The matter proceeded to a joint adjudication hearing. Before commencing the proceeding, the circuit court asked whether the parties were ready, and all answered affirmatively.

---

[1] The court conducted a joint but severed proceeding for respondent and Keionta F., whose appeal is being resolved simultaneously. See *In re Keionta F.*, 2022 IL App (1st) 211004-U.

¶ 6    Odunuga testified that he attended DePaul University. Around 6 p.m. on December 21, 2019, Odunuga exited the Fullerton Avenue bus and crossed the street toward a gas station. Keionta F., whom Odunuga recognized from his neighborhood and whom he identified in court, approached. Odunuga believed Keionta F. would say hello, but then saw a firearm "similar" to an AR-15 tucked under Keionta F.'s clothing.

¶ 7    Keionta F. put the firearm in Odunuga's back, walked him into a building, and then to a staircase. There, Odunuga saw respondent, whom Odunuga also identified in court, and another person. Respondent asked Odunuga for his iPhone, Android tablet, and wallet. Odunuga complied because he was afraid. Respondent then "pushed" Odunuga, who walked to his apartment building. Someone told Odunuga to contact the police, so he left the apartment building and flagged down a squad car. Odunuga related what happened, and provided respondent's and Keionta F.'s names and descriptions.

¶ 8    As the officers drove Odunuga home, he observed respondent and Keionta F. walking with others, and "alert[ed]" the officers that he recognized "the two people that just robbed" him, although they were wearing different clothing. He then went to a police station, made a statement, and identified his wallet and cash which had been recovered.

¶ 9    During cross-examination,[2] Odunuga denied that it was dark when the incident occurred, and testified that "[v]isibility was clear at that time." He believed the incident took place at 5:45 p.m., and did not remember telling officers that it occurred at 6:16 p.m. Odunuga did not see from which direction Keionta F. approached him, but it was "likely" from the side. When

---

[2] Each minor adopted the cross-examination by the other minor.

Odunuga observed Keionta F., Keionta F. immediately pointed the firearm at Odunuga's face and guided him through the propped-open door of a building and to a stairwell.

¶ 10 Odunuga focused on the firearm, and each "minute "turn[ed] into an hour." He was familiar with AR-15s and asserted that Keionta F. had an assault weapon. Although he could not "recall perfectly," he had "at least" $30 in his wallet. Once Odunuga entered the building, he observed that respondent and the other man also had firearms. As Odunuga walked home, he did not ask anyone to call the police because he was "black" and "can't stop someone" to ask for a phone. When he returned home, the security guard in his building did not let him use the phone to call the police because the offense occurred somewhere else.

¶ 11 After walking for approximately three minutes, Odunuga flagged a squad car and told Chicago police officer Carly Cervantez that three individuals with AR-15 style weapons robbed him. He then entered her vehicle. Odunuga denied telling an officer that one offender had a "handgun," and stated that video from the squad car would establish that he told officers the names of the offenders. The Android tablet was never recovered. He forgot to tell the officers that his iPhone was taken. The following exchange then took place:

> "Q: Okay. But you're saying that the iPhone was taken.
>
> A: Say that again.
>
> Q: You're saying the iPhone was actually taken.
>
> A: By the time I left the interaction, I got my iPhone on me.
>
> Q: Okay. So your iPhone was taken?
>
> A: Yes, it was."

¶ 12 Odunuga was not sure how much time passed between the incident and the arrest, but testified that 45 minutes to an hour may have elapsed. His wallet was recovered, but he was not "exact" about the amount of money inside. Odunuga folded his money in a certain way, so he knew it was his currency. He denied that respondent and Keionta F. were already detained when he saw them. Odunuga recognized respondent and Keionta F. because he had spoken with them at least twice, including a "couple" of weeks prior to the incident when he saw them outside a Burger King and they "begged" him to purchase them food.

¶ 13 Chicago police officer Delagarza testified that after receiving a call regarding a robbery at Fullerton and Ashland, he toured the area looking for people who matched the description of the alleged offenders. On Fullerton, Delagarza stopped a group that included individuals matching the description. At trial, Delagarza did not recall the descriptions he received, but identified respondent and Keionta F. as two of the individuals he stopped. As Delagarza and another officer spoke to the group, a squad car carrying the victim arrived, a show-up occurred, and respondent and Keionta F. were identified. Respondent and Keionta F. were transported to a police station where custodial searches were performed.

¶ 14 During cross-examination, Delagarza testified that he was unsure whether December 21, 2019, was the shortest day of the year and did not know when the sun rose and set. It was "nighttime" when Delagarza stopped the group on the street at 6:42 p.m. Afterwards, the squad car carrying the victim arrived. At that time, it had been dark for several hours. Delagarza did not remember whether the victim exited the squad car during the show-up and he was unaware of any surveillance videos that captured the incident or eyewitnesses. No firearms were recovered when Delagarza patted down respondent and Keionta F. Although respondent and Keionta F.

were wearing winter coats, the original description was "three male blacks with short-type handguns" wearing hoodies. During redirect, Delagarza explained that officers do not act "differently" based upon the type of weapon used in an offense.

¶ 15    Respondent's counsel then stated he had proceeded knowing that Cervantez, who drafted the incident report, was not present at trial, but in light of Odunuga's testimony, Cervantez was needed to prove-up certain impeachment. Counsel requested a continuance so that a new subpoena could be issued, or, in the alternative, the State could "enter into some sort of stipulation."

¶ 16    The circuit court denied the request, as it specifically asked whether there were any motions before the hearing began. Respondent's counsel replied that he could not "foresee" how a witness would testify. The court stated that counsel could have stated for the record if the defense was not ready or wanted to be heard on this issue and the court could have heard argument, but all parties answered ready.

¶ 17    Respondent's counsel requested that the case be passed in order to discuss a stipulation with the State. Following a break, counsel stated that there was no agreement. Counsel then asked to make an offer of proof as to Cervantez's testimony, which Keionta F.'s counsel joined.

¶ 18    The State objected, arguing that the issue could have been handled in a pretrial motion and the parties answered ready knowing which officers were present in court. The State argued that counsel should be prepared for "any and all testimony that may or may not come out at trial," both sides answered ready, and the State had rested. Over objections from both respondent's and Keionta F.'s counsels, the court denied respondent's counsel's request to make

an offer of proof, noting that the State could not test the proffered evidence by cross-examining a witness.

¶ 19    Respondent did not testify. Prior to Keionta F.'s testimony, respondent's counsel requested that Keionta F.'s testimony not be used against respondent. The State replied that the cases were not consolidated; rather, they proceeded together for the court's convenience and were severed unless testimony was "actually adopt[ed]." The court then stated that respondent's counsel made it "clear" that respondent was not adopting Keionta F.'s testimony.

¶ 20    Keionta F. testified that in December 2019, he lived in a townhouse near the intersection of Fullerton and Ashland. On the evening of December 21, 2019, Keionta F. was at home playing video games with respondent. At one point, Keionta F., respondent, and three friends met outside Keionta F.'s home and left to see holiday lights. As they headed east, they were stopped by police. Keionta F. never saw Odunuga that night, and saw him for the first time at trial. During cross-examination, Keionta F. denied leaving home earlier on December 21, 2019, and opined that the police told Odunuga his name.

¶ 21    In finding respondent guilty of aggravated robbery, robbery, and theft, and thereby delinquent, the circuit court found Odunuga credible, but difficult to understand due to his accent. The court noted Odunuga's "unequivocal" identification of respondent and Keionta F., and that he knew them from the neighborhood. The court also noted that if respondent and Keionta F. robbed Odunuga near their homes, the "wise thing" was to change clothes and "dump" everything except for the wallet and cash. However, the court questioned whether the weapons used were "real" or replicas, and acquitted respondent of armed robbery. After argument, the court sentenced respondent to 24 months of probation.

¶ 22 On appeal, respondent first contends that the circuit court's delinquency findings should be reversed because Odunuga's testimony was incredible, no evidence established that Odunuga's property was recovered from respondent, his clothing did not match the description given by Odunuga, and he did not flee when approached by police. He further contends that the circuit court only found Odunuga credible after improperly considering Keionta F.'s testimony.

¶ 23 In delinquency proceedings, as in criminal cases, a reviewing court must determine whether, after viewing the evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Internal quotation marks omitted.) *In re Q.P.*, 2015 IL 118569, ¶ 24. The trier of fact is responsible for resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from the facts presented at trial. *People v. McLaurin*, 2020 IL 124563, ¶ 22. This court will not retry the respondent, "nor will we substitute our judgment for that of the trier of fact." *Id.* A delinquency finding will be reversed "only if the evidence is so improbable, unsatisfactory, or inconclusive that it raises a reasonable doubt of the [respondent's] guilt." *In re Q.P.*, 2015 IL 118569, ¶ 24.

¶ 24 To prove respondent delinquent for aggravated robbery, the State had to prove he knowingly took property from Odunuga by force or by threatening the imminent use of force while indicating verbally or by his actions that he was armed with a firearm or other dangerous weapon. 720 ILCS 5/18-1(b)(1) (West 2018). A person commits robbery "when he or she knowingly takes property, *** from the person or presence of another by the use of force or by threatening the imminent use of force." 720 ILCS 5/18-1(a) (West 2018). To prove respondent delinquent for theft as charged, the State was required to prove he knowingly obtained or exerted

unauthorized control over Odunuga's property with the intent to permanently deprive Odunuga of its use or benefit. See 720 ILCS 5/16-1(a)(1)(A) (West 2018).

¶ 25     Viewing the evidence in the light most favorable to the State, we conclude that a rational trier of fact could have found beyond a reasonable doubt that respondent committed aggravated robbery, robbery, and theft. Odunuga testified that Keionta F. approached, retrieved what Odunuga believed was an AR-15, and guided Odunuga into a building where respondent and another person, who were similarly armed, were present. Then, respondent asked for Odunuga's cell phone and other items. Odunuga complied because he was afraid. Odunuga immediately reported the robbery and thereafter identified respondent and Keionta F. on the street as two of the people who robbed him.

¶ 26     While no evidence established that proceeds from the robbery were recovered from respondent, the recovery of proceeds is not necessary to prove a robbery. See, *e.g.*, *People v. Hughes*, 259 Ill. App. 3d 172, 177-78 (1994) (affirming the defendant's armed robbery conviction even though neither a firearm nor robbery proceeds were found on his person less than 20 minutes after the crime). Respondent also argues that not fleeing from Delagarza demonstrates his innocence. However, while "consciousness of guilt can be inferred from flight, the converse, that failure to flee is indicative of innocence, is not a necessary corollary." *People v. Zarate*, 264 Ill. App. 3d 667, 675 (1994). Given this evidence, we cannot say that no rational trier of fact could have found respondent guilty of aggravated robbery, robbery, and theft (*McLaurin*, 2020 IL 124563, ¶ 22), and therefore delinquent (*In re Samantha V.*, 234 Ill. 2d 359, 365 (2009)).

¶ 27　Respondent nonetheless contends that Odunuga was impeached as to when the sun set, respondent's and Keionta F.'s clothing, and whether respondent and Keionta F. were in custody at the time of the show-up. Therefore, according to respondent, Odunuga's testimony, including his identification of respondent, was unworthy of belief.

¶ 28　The State must prove the identity of the offender beyond a reasonable doubt. *People v. Slim*, 127 Ill. 2d 302, 307 (1989). A single witness's testimony is sufficient evidence to convict if the testimony is positive and credible. *People v. Gray*, 2017 IL 120958, ¶ 36. Contradictory testimony or minor or collateral discrepancies in testimony do not automatically render the totality of a witness's testimony incredible. *Id.* ¶ 47. "Minor discrepancies in testimony affect only its weight and will not render it unworthy of belief." *Id.*; see also *People v. Peoples*, 2015 IL App (1st) 121717, ¶ 67 (discrepancies in witness testimony are an issue for the trier of fact, which may accept or reject as much or as little of the witness's testimony as it likes). On appeal, this court must determine if, "in light of the record, a fact finder could reasonably accept the testimony as true beyond a reasonable doubt." *People v. Cunningham*, 212 Ill. 2d 274, 279 (2004).

¶ 29　When assessing identification testimony, we rely upon the factors set forth in *Neil v. Biggers*, 409 U.S. 188 (1972). These factors include the witness's "opportunity" to view the offender at the time of the offense, the "degree of attention," the accuracy of the witness's prior description of the offender, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the offense and the identification. *Id.* at 199-200. Where the witness previously knew the accused, the reliability of the identification is strengthened. *People v. Jones*, 187 Ill. App. 3d 823, 831 (1989).

¶ 30　The *Biggers* factors, considered in relation to Odunuga's identification of respondent, weigh in the State's favor. The record reveals that Odunuga knew respondent from the neighborhood and had spoken to him on at least two occasions. Odunuga then saw respondent inside the building stairway and, during their interaction, respondent asked for Odunuga's items and pushed him away. This was a sufficient opportunity to identify respondent, particularly because Odunuga already knew him, and thus this factor favors reliability. See *People v. Macklin*, 2019 IL App (1st) 161165, ¶ 30 (a period of seconds can be sufficient opportunity to observe an offender).

¶ 31　An accuracy of a prior description analysis is not possible because the record does not contain the description Odunuga initially gave to officers. However, Odunuga testified that he identified respondent by name to officers and gave a description, and Delagarza testified that the radio call identified the offenders as "three male blacks with short-type handguns" wearing hoodies. To the extent that respondent argues the discrepancies in the prior description of his clothing are fatal to the State's case, we disagree. As we noted in *People v. Thompson*, 2016 IL App (1st) 133648, ¶ 37, concern about a witness's physical description of an offender "is not present" when the witness identifies the offender by name. While the description received by Officer Delagarza stated that the offenders were wearing hoodies, rather than winter coats, respondent was not arrested immediately after the incident and had the opportunity to change his clothing.

¶ 32　Finally, Odunuga's certainty and the time between identifications favors reliability, as Odunuga was immediately certain that respondent was the offender and identified respondent on the street less than an hour after the incident. This court has found that significantly greater

lengths of time have not rendered identifications unreliable. See *People v. Malone*, 2012 IL App (1st) 110517, ¶ 36 (16-month delay between crime and positive identification). Accordingly, we cannot say that Odunuga's identification of respondent was so unreliable that there exists a reasonable doubt as to respondent's guilt. *McLaurin*, 2020 IL 124563, ¶ 22.

¶ 33 We are also unpersuaded by respondent's argument that Odunuga was an incredible witness. Both Odunuga and Delagarza were cross-examined as to whether the sun was still up at 5:45 p.m. on December 21, 2019, and while Odunuga denied it was dark, he also testified that "[v]isibility was clear at that time." Whether the sun was up at the time of the offense did not automatically render the entirety of Odunuga's testimony incredible. Similarly, whether respondent was wearing a coat rather than a hoodie when he was arrested was not fatal to the State's case. See *Gray*, 2017 IL 120958, ¶ 36 (a "conviction will not be reversed simply because the evidence is contradictory or because the [respondent] claims that a witness was not credible"). Moreover, the description of respondent's and Keionta F.'s clothing was ancillary to their identification when Odunuga testified he knew respondent's and Keionta F.'s names. See *People v. Wilson*, 2020 IL App (1st) 170443, ¶ 17. In other words, Odunuga did not identify respondent and Keionta F. based on their clothing alone.

¶ 34 As to the timing of Odunuga's identification, he testified that as he was being driven home, he observed respondent and Keionta F. walking with others and identified them as the "people who just robbed" him. Delagarza, on the other hand, testified that the vehicle carrying Odunuga arrived after he stopped respondent, Keionta F., and their companions on the street. Notwithstanding, there is no dispute that respondent and Keionta F. were on the street when Odunuga identified them. These discrepancies also were an issue for the trier of fact. *Peoples*,

2015 IL App (1st) 121717, ¶ 67 (the fact that one witness's testimony contradicts another's does not render each person's testimony beyond belief).

¶ 35    Respondent further argues that it was improbable that he and Keionta F. would rob Odunuga without wearing masks if they knew him and then remain in the neighborhood, or that an AR-15 could be concealed in clothing. However, when weighing evidence, the trier of fact is not required to disregard inferences flowing naturally from the evidence before it, nor need it search out all possible explanations consistent with innocence and raise them to the level of reasonable doubt. *In re Jonathon C.B.*, 2011 IL 107750, ¶ 60. Here, the court found Odunuga's version of events credible, as evidenced by its finding. See *People v. Bradford*, 2016 IL 118674, ¶ 12 ("It is the responsibility of the trier of fact to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the facts.").

¶ 36    Respondent finally argues that the court only found Odunuga credible because it improperly considered Keionta F.'s testimony, which respondent's counsel specifically stated was not adopted in respondent's case. Respondent concludes that the court improperly relied on Keionta F.'s testimony that Keionta F. "lived with [respondent] in the same apartment building where the robbery occurred" as support for Odunuga's identification of respondent and Keionta F. as "from the neighborhood," and to explain how respondent and Keionta F. could change clothes and dispose of any "incriminating evidence." Respondent acknowledges that he did not object before the circuit court, but asks this court to consider this claim for plain error.

¶ 37    To preserve an error on appeal, a respondent must object at trial and raise the issue in a written posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). However, the plain error doctrine permits this court to review unpreserved error when an error occurred and either "the

evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant," or "that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." (Internal quotation marks omitted.) *People v. Thompson*, 238 Ill. 2d 598, 613 (2010). Under either prong of the plain error doctrine, the burden of persuasion remains on the defendant. *People v. Bowman*, 2012 IL App (1st) 102010, ¶ 30. The first step in plain error review is to determine whether an error occurred. See *People v. Hood*, 2016 IL 118581, ¶ 18 (without error, there can be no plain error).

¶ 38　When a court "sits as the trier of fact," we presume the court will only consider competent evidence. See *In re Jovan A.*, 2014 IL App (1st) 103835, ¶ 42; see also *People v. Jones*, 2017 IL App (1st) 143403, ¶ 36 (the circuit court, "as the trier of fact, is presumed to know the law and to have considered only competent evidence in making a determination on the merits"). "To rebut this presumption, the record must affirmatively show that the trial court actually used the evidence improperly as alleged." *Jones*, 2017 IL App (1st) 143403, ¶ 36. In a bench trial, it is the circuit court's responsibility "to weigh evidence and draw reasonable inferences therefrom, and to resolve any conflicts in the evidence." *People v. Kiertowicz*, 2013 IL App (1st) 123271, ¶ 19.

¶ 39　Initially, we note that Keionta F. did not testify that "he lived with [respondent] in the same apartment building where the robbery occurred." Rather, Keionta F. testified that he lived in a townhome, and that respondent was there playing video games on the night of the incident.

¶ 40　Be that as it may, respondent has not overcome the presumption that the circuit court only considered competent evidence. Odunuga testified that he recognized respondent and Keionta F. from the neighborhood, and had spoken to them twice previously, including when they begged

him to buy them food. Here, the court properly relied on Odunuga's testimony to conclude that respondent and Keionta F. lived in the neighborhood and could have changed clothes and disposed of the robbery proceeds and firearms in their homes. In other words, the court drew this reasonable inference based upon Odunuga's explanation as to how he recognized respondent and Keionta F. See *Kiertowicz*, 2013 IL App (1st) 123271, ¶ 19. As respondent has failed to rebut the presumption that the circuit court considered only competent evidence (*Jones*, 2017 IL App (1st) 143403, ¶ 36), he has failed to establish error. Absent error, there can be no plain error and we must honor respondent's procedural default.

¶ 41    Accordingly, we find there was sufficient evidence from which a rational trier of fact could conclude that respondent committed aggravated robbery, robbery, and theft.

¶ 42    Respondent next contends that he was denied effective assistance by counsel's failure to request a continuance when Officer Cervantez did not appear at the adjudication hearing. Respondent argues that he was prejudiced because Cervantez was the only witness who could have impeached Odunuga's testimony that he identified respondent and Keionta F. by name.

¶ 43    A minor charged with committing an offense is entitled to the effective assistance of counsel in juvenile delinquency proceedings. *In re Danielle J.*, 2013 IL 110810, ¶ 31. "The standard utilized to gauge the effectiveness of counsel in juvenile proceedings is the [*Strickland v. Washington*, 466 U.S. 668 (1984)] standard, used in criminal cases." *Id.* To demonstrate ineffective assistance, a minor must establish that counsel's performance failed to "meet an objective standard of competence," and this deficient performance prejudiced the minor. *Id.* A failure to establish either prong defeats an ineffectiveness claim. *People v. Cherry*, 2016 IL 118728, ¶ 31.

¶ 44    Here, respondent contends that he was denied effective assistance when trial counsel failed to obtain a continuance to present the "only witness" who could have impeached Odunuga, that is, Cervantez, the officer who wrote the "incident report" omitting Odunuga's "claim" that he knew the offenders by name. Respondent concedes that the record on appeal does not contain the report, or an offer of proof, but asserts that trial counsel had a "good faith" basis to cross-examine Odunuga and seek to present the testimony of Cervantez. The State replies that the record is "silent" as to the possible content of Cervantez's testimony and therefore, is insufficient for review of respondent's claim.

¶ 45    Generally, "defendants are required to raise ineffective assistance of counsel claims on direct review if apparent on the record." *People v. Veach*, 2017 IL 120649, ¶ 46. However, our supreme court has acknowledged that some ineffectiveness claims may "be better suited to collateral proceedings" when "the record is incomplete or inadequate for resolving the claim." *Id*. In other words, an ineffectiveness claim that depends upon facts not found in the record on direct appeal is more properly raised in a postconviction proceeding. See *People v. Harris*, 2018 IL 121932, ¶ 48.

¶ 46    However, postconviction proceedings are not available to delinquent minors. *In re T.R.*, 2019 IL App (4th) 190051, ¶ 33; see also *In re Vincent K.*, 2013 IL App (1st) 112915, ¶ 50. This is because "the Post-Conviction Hearing Act [citation] applies only to convictions and persons imprisoned in the penitentiary" and "[j]uveniles are neither convicted nor imprisoned when they are adjudicated delinquent." *In re T.R.*, 2019 IL App (4th) 190051, ¶ 33. Accordingly, "in some circumstances juveniles are unable to adequately present claims of ineffective assistance of

counsel on direct appeal because they have not developed a factual record in the trial court and cannot do so in a collateral attack." *Id.* ¶ 35.

¶ 47    *In re R.M.*, 2022 IL App (4th) 210426, is instructive. In that case, the circuit court found the respondent delinquent for aggravated criminal sexual assault. *Id.* ¶ 12. On appeal, the respondent contended, for the first time, that he was denied effective assistance by his counsel's failure to investigate a witness. *Id.* ¶ 19. The respondent asserted that because postconviction proceedings were unavailable to him, the cause should be remanded for an inquiry pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984). *Id.* ¶ 19. The respondent attached the affidavit of appellate counsel to his brief which provided details regarding the claim, but did not supplement the record. *Id.* ¶ 20.

¶ 48    This court found that the respondent's ineffectiveness claim, raised for the first time on appeal and based on matters outside the record, could not be addressed. *Id*. ¶¶ 21-23. Moreover, remand for development of the respondent's claim was unwarranted due to the "complete absence of any factual support for his claim in the record." *Id.* ¶ 23. Although this court, in other cases, has remanded for evidentiary hearings where minors were unable to adequately present a claim of ineffective assistance on direct appeal because the record was not developed in the circuit court and a collateral attack was not possible, we noted that, in those cases, the record contained documentation supporting the claims. See *id.* ¶¶ 27-29 (citing *In re Ch. W.*, 399 Ill. App. 3d 825, 827-29 (2010) and *In re Alonzo O.*, 2015 IL App (4th) 150308, ¶¶ 13, 17, 23, 29-30, *abrogated on other grounds by Veach*, 2017 IL 120649, ¶ 39).

¶ 49    In *In re R.M.*, however, the respondent failed to properly supplement the record on appeal with documentation supporting his claim. *Id.* ¶ 30. Notably, the respondent could have requested

to supplement the record with his own affidavit to demonstrate the "existence of his claim" and aid in the resolution of his appeal. See *id.* ¶ 31 (quoting Illinois Supreme Court Rule 329 (eff. July 1, 2017) (" '[i]f the record is insufficient to present fully and fairly the questions involved, the requisite portions may be supplied at the cost of the appellant' and, '[i]f necessary, a supplement to the record may be certified and transmitted' ") and *People v. Guest*, 115 Ill. 2d 72, 114 (1986) ("rejecting an argument by the State that under Rule 329 it was necessary for a defendant to demonstrate that the desired supplementary materials " 'were part of the trial proceedings' ")).

¶ 50     Because the respondent did not properly supplement the record, it was "devoid" of facts that would support a remand for further inquiry into his allegations of error. *Id.* Finally, we note that Illinois Supreme Court Rule 383 (eff. July 1, 2017), which provides for motions to the supreme court seeking the exercise of its supervisory authority, could offer the respondent an opportunity for relief. *Id.* ¶¶ 32-33.

¶ 51     Here, as in *In re R.M.*, respondent has not supplemented the record with any factual support for his ineffective assistance claim. Rather, respondent argues that trial counsel's questions, which he "must have had a good-faith basis to ask," demonstrate that Cervantez did not include Odunuga's "supposed acquaintance" with respondent and Keionta F. in the incident report. However, respondent speculates as to Cervantez's testimony, and as the State notes, Cervantez could have testified to additional facts not contained in the incident report. See *People v. Reed*, 243 Ill. App. 3d 598, 608 (1993) ("A police report is meant to be a summary, not a blow by blow chronology of what occurred."); see also *People v. Bew*, 228 Ill. 2d 122, 135 (2008) (to succeed on an ineffectiveness claim, there must be actual prejudice rather than mere speculation

as to prejudice). Respondent arguably could have requested to supplement the record with trial counsel's or Officer Cervantez's affidavit to demonstrate his claim and aid our resolution of his appeal, and absent such an attempt, the record does not contain facts supporting remand for further inquiry into his allegations of error. *In re R.M.*, 2022 IL App (4th) 210426, ¶¶ 30-31. We therefore conclude that the record on appeal is inadequate to resolve respondent's ineffective assistance claim on direct.

¶ 52     Respondent finally contends that the court's delinquency findings for robbery and theft should be vacated pursuant to the one-act, one-crime rule when they arose from the same physical act as the court's delinquency finding for aggravated robbery. He acknowledges he failed to preserve this issue by not raising it before the circuit court. See *People v. Hillier*, 237 Ill. 2d 539, 544-45 (2010) ("to preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required"). However, he asks this court to review his claim for plain error. A violation of the one-act, one-crime rule constitutes second-prong plain error. *People v. Coats*, 2018 IL 121926, ¶ 10.

¶ 53     Pursuant to the one-act, one-crime doctrine, multiple convictions are improper if they are "based on precisely the same act." *In re Angel P.*, 2014 IL App (1st) 121749, ¶ 66. This rule applies to juvenile delinquency proceedings. *In re Samantha V.*, 234 Ill. 2d at 375. Multiple convictions are proper "where a defendant has committed several acts, despite the interrelationship of those acts." *People v. King*, 66 Ill. 2d 551, 566 (1977). "[A]n 'act' is defined as any overt or outward manifestation that will support a separate conviction." *People v. Almond*, 2015 IL 113817, ¶ 47. First, we must determine "whether a defendant's conduct consisted of separate acts or a single physical act." *People v. Rodriguez*, 169 Ill. 2d 183, 186 (1996). If the

defendant committed multiple acts, the court then determines whether any offenses are lesser-included offenses. *Id.* Whether a violation of the one-act, one-crime rule has occurred is a question of law, which is reviewed *de novo*. *In re Angel P.*, 2014 IL App (1st) 121749, ¶ 63.

¶ 54    Here, the petition for delinquency alleged that respondent committed aggravated robbery, robbery, and theft. All of these offenses were based on the same physical act, that is, taking an Android tablet and a wallet from Odunuga. The State concedes, and we agree, that because these offenses stemmed from the same act, the circuit court's multiple delinquency findings cannot stand. *Samantha V.*, 234 Ill. 2d at 375.

¶ 55    The proper remedy for a one-act, one-crime rule violation is to vacate the delinquency findings for the less serious offenses and enter a single finding of delinquency and sentence on the most serious offense. *Id.* at 379-80; see also *People v. Smith*, 233 Ill. 2d 1, 20 (2009) ("judgment and sentence may be entered only on the most serious offense"). To determine the most serious offense, we compare their relative punishments. *People v. Artis*, 232 Ill. 2d 156, 170 (2009).

¶ 56    Aggravated robbery is a Class 1 felony (720 ILCS 5/18-1(c) (West 2018)) with a sentencing range of 4 to 15 years in prison (730 ILCS 5/5-4.5-30(a) (West 2018)). Robbery, as charged in this case, is a Class 2 felony (720 ILCS 5/18-1(c) (West 2018)) with a sentencing range of three to seven years in prison (730 ILCS 5/5-4.5-35(a) (West 2018). Theft, as charged in this case, is a Class 3 felony (720 ILCS 5/16-1(b)(4) (West 2018)) with a sentencing range of two to five years in prison (730 ILCS 5/5-4.5-40(a) (West 2018)). Because aggravated robbery is the most serious offense in this case, we vacate the circuit court's delinquency findings for robbery and theft. The sentence imposed by the circuit court remains in effect.

¶ 57    The judgment of the circuit court of Cook County is affirmed in part and vacated in part.

¶ 58    Affirmed in part; vacated in part.