2022 IL App (1st) 211004-U

FIFTH DIVISION
March 18, 2022

No. 1-21-1004

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| *In re* Keionta F., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Cook County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 19 JD 2004 |
| | ) | |
| Keionta F., a Minor, | ) | Honorable |
| | ) | Linda Pauel, |
| Respondent-Appellant). | ) | Judge, presiding. |

_____

PRESIDING JUSTICE DELORT delivered the judgment of the court.
Justices Hoffman and Cunningham concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The evidence was sufficient to support the circuit court's delinquency findings for aggravated robbery, robbery, and theft, despite respondent's contention that the victim's identification was unreliable. The circuit court's delinquency findings for robbery and theft must be vacated pursuant to the one-act, one-crime rule.

¶ 2    Following a bench trial, respondent, Keionta F., a minor, was found delinquent for the offenses of aggravated robbery, robbery, and theft, and sentenced to 12 months of probation. On appeal, he contends that the circuit court's delinquency findings should be reversed because the

victim's identification was unreliable and the evidence did not show that the proceeds of the robbery were recovered from respondent or a co-offender. Respondent further contends that the circuit court's delinquency findings for robbery and theft should be vacated pursuant to the one-act, one-crime rule. We affirm in part and vacate in part.

¶ 3    On December 22, 2019, the State filed a petition for adjudication of wardship alleging that the 16-year-old respondent committed armed robbery, aggravated robbery, robbery, and theft. The charges arose out of a December 21, 2019 incident during which respondent, his cousin Kejuan F., and another individual allegedly took property from Toluwalase Odunuga.[1]

¶ 4    As relevant here, the petition alleged that respondent committed aggravated robbery by indicating through his words or actions that he had a firearm and, by the use or threat of force, taking Odunuga's Android tablet and leather wallet containing miscellaneous "cards" and $40 (720 ILCS 5/18-1(b) (West 2018)). The petition further alleged that respondent committed robbery by taking the same property from Odunuga by the use or threat of force (720 ILCS 5/18-1(a) (West 2018)), and theft when he knowingly obtained or exerted unauthorized control of that property and intended to permanently deprive Odunuga of its use or benefit (720 ILCS 5/16-1(a)(1) (West 2018)).

¶ 5    Odunuga testified that he attended DePaul University. Around 6 p.m. on December 21, 2019, Odunuga exited the Fullerton Avenue bus and crossed the street toward a gas station. Respondent, whom Odunuga recognized from his neighborhood and whom he identified in court, approached. Odunuga believed respondent would say hello, but then saw a firearm "similar" to an AR-15 tucked under respondent's clothing.

---

[1] The court conducted a joint but severed proceeding for respondent and Kejuan F., whose appeal is being resolved simultaneously. See *In re Kejuan F.*, 2022 IL App (1st) 211003-U.

¶ 6    Respondent put the firearm in Odunuga's back, walked him into a building, and then to a staircase. There, Odunuga saw Kejuan F. and another person. Kejuan F., whom Odunuga also identified in court, asked Odunuga for his iPhone, Android tablet, and wallet. Odunuga complied because he was afraid. Kejuan F. then "pushed" Odunuga, who walked to his apartment building. Someone told Odunuga to contact the police, so he left the apartment building and flagged down a squad car. Odunuga related what happened, and provided respondent's and Kejuan F.'s names and descriptions.

¶ 7    As the officers drove Odunuga home, he observed respondent and Kejuan F. walking with others, and "alert[ed]" the officers that he recognized "the two people that just robbed" him although they were wearing different clothing. He then went to a police station, made a statement, and identified his wallet and cash which had been recovered.

¶ 8    During cross-examination,[2] Odunuga denied that it was dark when the incident occurred, and testified that "[v]isibility was clear at that time." He believed the incident took place at 5:45 p.m. and did not remember telling officers that it occurred at 6:16 p.m. Odunuga did not see from which direction respondent approached him, but it was "likely" from the side. When Odunuga observed respondent, respondent immediately pointed the firearm at Odunuga's face and guided him through the propped-open door of a building and to a stairwell.

¶ 9    Odunuga focused on the firearm, and each "minute "turn[ed] into an hour." He was familiar with AR-15s and asserted that respondent had an assault weapon. Although Odunuga could not "recall perfectly," he had "at least" $30 in his wallet. Once Odunuga entered the building, he observed that the other two men had firearms as well. As Odunuga walked home, he

---

[2] Each minor adopted the cross-examination by the other minor.

did not ask anyone to call the police because he was "black" and "can't stop someone" to ask for a phone. When he returned home, the security guard in his building did not let him use the phone to call the police because the offense occurred somewhere else.

¶ 10    After walking for approximately three minutes, Odunuga flagged a squad car and told Chicago police officer Carly Cervantez that three individuals with AR-15 style weapons robbed him. He then entered her vehicle. Odunuga denied telling an officer that one offender had a "handgun," and stated that video from the squad car would establish that he told officers the names of the offenders. The Android tablet was never recovered. He forgot to tell the officers that his iPhone was taken. The following exchange then took place:

"Q: Okay. But you're saying that the iPhone was taken.

A: Say that again.

Q: You're saying the iPhone was actually taken.

A: By the time I left the interaction, I got my iPhone on me.

Q: Okay. So your iPhone was taken?

A: Yes, it was."

¶ 11    Odunuga was not sure how much time passed between the incident and the arrest, but testified that 45 minutes to an hour may have elapsed. His wallet was recovered, but he was not "exact" about the amount of money inside. Odunuga folded his money in a certain way, so he knew it was his currency. He denied that respondent and Kejuan F. were already detained when he saw them. Odunuga recognized respondent and Kejuan F. because he had spoken with them at least twice, including a "couple" of weeks prior to the incident when he saw them outside a Burger King and they "begged" him to purchase them food.

¶ 12 Chicago police officer Delagarza testified that after receiving a call regarding a robbery at Fullerton and Ashland, he toured the area looking for people who matched the description of the alleged offenders. On Fullerton, Delagarza stopped a group that included individuals matching the description. At trial, Delagarza did not recall the descriptions he received, but identified respondent and Kejuan F. as two of the individuals he stopped. As Delagarza and another officer spoke to the group, a squad car carrying the victim arrived, a show-up occurred, and respondent and Kejuan F. were identified. Respondent and Kejuan F. were transported to a police station where custodial searches were performed.

¶ 13 During cross-examination, Delagarza testified that he was unsure whether December 21, 2019, was the shortest day of the year and did not know when the sun rose and set. It was "nighttime" when Delagarza stopped the group on the street at 6:42 p.m. Afterwards, the squad car carrying the victim arrived; at that time, it had been dark for several hours. Delagarza did not remember whether the victim exited the squad car during the show-up and was unaware of any surveillance videos that captured the incident or eyewitnesses. No firearms were recovered when Delagarza patted-down respondent and Kejuan F. Although respondent and Kejuan F. were wearing winter coats, the original description was "three male blacks with short-type handguns" wearing hoodies. During redirect, Delagarza explained that officers do not act "differently" based upon the type of weapon used in an offense.

¶ 14 Respondent testified that in December 2019, he lived in a townhouse near the intersection of Fullerton and Ashland. On the evening of December 21, 2019, he was at home playing video games with Kejuan F. At one point, respondent, Kejuan F., and three friends met outside

respondent's home and left to see holiday lights. As they headed east, they were stopped by police. Respondent never saw Odunuga that night, and saw him for the first time at trial.

¶ 15    During cross-examination, respondent denied leaving home earlier on December 21, 2019. He opined that the police told Odunuga his name.

¶ 16    In finding respondent guilty of aggravated robbery, robbery, and theft, and thereby delinquent, the circuit court found Odunuga credible, if difficult to understand due to his accent. The court noted Odunuga's "unequivocal" identification of respondent and Kejuan F., and that he knew them from the neighborhood. The court also noted that if respondent and Kejuan F. robbed Odunuga near their homes, the "wise thing" was to change clothes and "dump" everything except for the wallet and cash. The court found respondent's testimony incredible. However, the court questioned whether the weapons used were "real" or replicas, and acquitted respondent of armed robbery. After argument, the court sentenced respondent to 12 months of probation.

¶ 17    On appeal, respondent first contends that the circuit

¶ 18    court's delinquency findings should be reversed when Odunuga's identification was unreliable and the evidence did not establish that Odunuga's property was recovered from respondent or Kejuan F.

¶ 19    In delinquency proceedings, as in criminal cases, a reviewing court must determine whether, after viewing the evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Internal quotation marks omitted.) *In re Q.P.*, 2015 IL 118569, ¶ 24. The trier of fact is responsible for resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences

from the facts presented at trial. *People v. McLaurin*, 2020 IL 124563, ¶ 22. This court will not retry the respondent, "nor will we substitute our judgment for that of the trier of fact." *Id.* A delinquency finding will be reversed "only if the evidence is so improbable, unsatisfactory, or inconclusive that it raises a reasonable doubt of the [respondent's] guilt." *In re Q.P.*, 2015 IL 118569, ¶ 24.

¶ 20    To prove respondent delinquent for aggravated robbery, the State had to prove he knowingly took property from Odunuga by force or by threatening the imminent use of force while indicating verbally or by his actions that he was armed with a firearm or other dangerous weapon. 720 ILCS 5/18-1(b)(1) (West 2018). A person commits robbery "when he or she knowingly takes property, *** from the person or presence of another by the use of force or by threatening the imminent use of force." 720 ILCS 5/18-1(a) (West 2018). To prove respondent delinquent for theft as charged, the State was required to prove he knowingly obtained or exerted unauthorized control over Odunuga's property with the intent to permanently deprive Odunuga of its use or benefit. See 720 ILCS 5/16-1(a)(1)(A) (West 2018).

¶ 21    Viewing the evidence in the light most favorable to the State, a rational trier of fact could have found beyond a reasonable doubt that respondent committed aggravated robbery, robbery, and theft. Odunuga testified that respondent approached, retrieved what Odunuga believed was an AR-15, and guided Odunuga into a building where Kejuan F. and another person, who were similarly armed, were waiting. Then, Kejuan F. asked for Odunuga's cell phone and other items. Odunuga complied because he was afraid. Odunuga immediately reported the robbery and thereafter identified respondent and Kejuan F. on the street as two of the people who robbed him.

¶ 22    While no evidence established that proceeds from the robbery were recovered from respondent, the recovery of proceeds is not necessary to sustain a delinquency finding for robbery. See, *e.g.*, *People v. Hughes*, 259 Ill. App. 3d 172, 177-78 (1994) (affirming the defendant's armed robbery conviction even though neither a firearm nor robbery proceeds were found on his person less than 20 minutes after the crime). Given the evidence that was adduced, however, we cannot say that no rational trier of fact could have found respondent guilty of aggravated robbery, robbery, and theft (*McLaurin*, 2020 IL 124563, ¶ 22), and therefore delinquent (*In re Samantha V.*, 234 Ill. 2d 359, 365 (2009)).

¶ 23    Respondent nonetheless contends that Odunuga's identification was unreliable and incredible. He argues that Odunuga was impeached as to when the sun set, respondent's and Kejuan F.'s clothing, the type of weapon respondent carried, and whether respondent and Kejuan F. were in custody at the time of the show-up.

¶ 24    The State must prove the identity of the offender beyond a reasonable doubt. *People v. Slim*, 127 Ill. 2d 302, 307 (1989). A single witness's testimony is sufficient evidence to convict if the testimony is positive and credible. *People v. Gray*, 2017 IL 120958, ¶ 36. Contradictory testimony or minor or collateral discrepancies in testimony do not automatically render the totality of a witness's testimony incredible. *Id.* ¶ 47. "Minor discrepancies in testimony affect only its weight and will not render it unworthy of belief." *Id.*; see also *People v. Peoples*, 2015 IL App (1st) 121717, ¶ 67 (discrepancies in witness testimony are an issue for the trier of fact, which may accept or reject as much or as little of the witness's testimony as it likes). On appeal, this court must determine if, "in light of the record, a fact finder could reasonably accept the

testimony as true beyond a reasonable doubt." *People v. Cunningham*, 212 Ill. 2d 274, 279 (2004).

¶ 25    When assessing identification testimony, we rely upon the factors set forth in *Neil v. Biggers*, 409 U.S. 188 (1972). These factors include the witness's "opportunity" to view the offender at the time of the offense, the "degree of attention," the accuracy of the witness's prior description of the offender, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the offense and the identification. *Id.* at 199-200. Where the witness previously knew the accused, the reliability of the identification is strengthened. *People v. Jones*, 187 Ill. App. 3d 823, 831 (1989).

¶ 26    The *Biggers* factors, considered in relation to Odunuga's identification of respondent, weigh in the State's favor. The record reveals that Odunuga knew respondent from the neighborhood and had spoken to him on at least two occasions. Just before the incident, Odunuga observed respondent approach and believed respondent wished to converse. This was a sufficient opportunity to identify respondent, particularly because Odunuga already knew him, and thus this factor favors reliability. See *People v. Macklin*, 2019 IL App (1st) 161165, ¶ 30 (a period of seconds can be sufficient opportunity to observe an offender).

¶ 27    Respondent argues that Odunuga's testimony that he paid attention to the firearm meant that he did not pay attention the person holding it. That Odunuga paid attention to the firearm, however, does not establish that he was so distracted that he could not identify respondent. Rather, it comports with his testimony that he first noticed respondent and then the firearm. *People v. Temple*, 2014 IL App (1st) 111653, ¶ 87 (identification reliable where witness "did not

continue looking at the driver after the first shot [but] *** testified that he knew [the] defendant from around the neighborhood and did not waver from his identification").

¶ 28    An accuracy of a prior description analysis is not possible because the record does not contain the description Odunuga initially gave to officers. However, Odunuga testified that he identified respondent by name to officers and gave a description, and Delagarza testified that the radio call identified the offenders as "three male blacks with short-type handguns" wearing hoodies. To the extent that respondent argues the discrepancies in the prior description of his clothing are fatal to the State's case, we disagree. As we noted in *People v. Thompson*, 2016 IL App (1st) 133648, ¶ 37, concern about a witness's physical description of an offender "is not present" when the witness identifies the offender by name. While the description received by Officer Delagarza stated that the offenders were wearing hoodies, rather than winter coats, respondent was not arrested immediately after the incident and had the opportunity to change his clothing.

¶ 29    Finally, Odunuga's certainty and the time between identifications favors reliability, as Odunuga was immediately certain that respondent was the offender and identified respondent on the street within an hour of the incident. This court has found that significantly greater lengths of time have not rendered identifications unreliable. See *People v. Malone*, 2012 IL App (1st) 110517, ¶ 36 (16-month delay between crime and positive identification). Accordingly, we cannot say that Odunuga's identification of respondent was so unreliable that a reasonable doubt exists as to respondent's guilt. *McLaurin*, 2020 IL 124563, ¶ 22.

¶ 30    We are also unpersuaded by respondent's argument that Odunuga was an incredible witness. Both Odunuga and Delagarza were cross-examined as to whether the sun was still up at

5:45 p.m. on December 21, 2019, and while Odunuga denied it was dark, he also testified that "[v]isibility was clear at that time." Whether the sun was up at the time of the offense did not automatically render the entirety of Odunuga's testimony incredible. Similarly, whether respondent was wearing a coat rather than a hoodie when he was arrested was not fatal to the entirety of the Odunuga's testimony. See *Gray*, 2017 IL 120958, ¶ 36 (a "conviction will not be reversed simply because the evidence is contradictory or because the [respondent] claims that a witness was not credible"). Moreover, the description of respondent's and Kejuan F.'s clothing was ancillary to their identification when Odunuga testified he knew respondent's and Kejuan F.'s names. See *People v. Wilson*, 2020 IL App (1st) 170443, ¶ 17. In other words, Odunuga did not identify respondent and Kejuan F. based on their clothing alone.

¶ 31    As to the timing of Odunuga's identification, he testified that as he was being driven home, he observed respondent and Kejuan F. walking with others and identified them as the "people who just robbed" him. Delagarza, on the other hand, testified that the vehicle carrying Odunuga arrived after he stopped respondent, Kejuan F., and their companions on the street. These discrepancies were also an issue for the trier of fact. *Peoples*, 2015 IL App (1st) 121717, ¶ 67 (the fact that one witness's testimony contradicts another's does not render each person's testimony beyond belief).

¶ 32    Here, the court found Odunuga's version of events more credible than the version asserted by respondent, as demonstrated by its findings. See *People v. Bradford*, 2016 IL 118674, ¶ 12 ("It is the responsibility of the trier of fact to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the facts."). When weighing evidence, the trier of fact is not required to disregard inferences flowing naturally from the evidence before

it, nor need it search out all possible explanations consistent with innocence and raise them to the level of reasonable doubt. *In re Jonathon C.B.*, 2011 IL 107750, ¶ 60. Moreover, the circuit court was not "required to accept the [respondent's] version of the facts." See *People v. Jacobs*, 2016 IL App (1st) 133881, ¶ 53. Accordingly, we find there was sufficient evidence from which a rational trier of fact could conclude that respondent committed aggravated robbery, robbery, and theft.

¶ 33 Respondent next contends that the circuit court's delinquency findings for robbery and theft should be vacated pursuant to the one-act, one-crime rule when they arose from the same physical act as the court's delinquency finding for aggravated robbery. He acknowledges he failed to preserve this issue by not raising it before the circuit court. See *People v. Hillier*, 237 Ill. 2d 539, 544-45 (2010) ("to preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required"). However, he asks this court to review his claim pursuant to the plain error doctrine. Under the plain error doctrine, a reviewing court may reach forfeited claims where a clear or obvious error occurred and "(1) the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) the error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Ramsey*, 239 Ill. 2d 342, 440-41 (2010). A violation of the one-act, one-crime rule constitutes second-prong plain error. *People v. Coats*, 2018 IL 121926, ¶ 10.

¶ 34 Pursuant to the one-act, one-crime doctrine, multiple convictions are improper if they are "based on precisely the same act." *In re Angel P.*, 2014 IL App (1st) 121749, ¶ 66. This rule

applies to juvenile delinquency proceedings. *In re Samantha V.*, 234 Ill. 2d at 375. Multiple convictions are proper "where a defendant has committed several acts, despite the interrelationship of those acts." *People v. King*, 66 Ill. 2d 551, 566 (1977). "[A]n 'act' is defined as any overt or outward manifestation that will support a separate conviction." *People v. Almond*, 2015 IL 113817, ¶ 47. First, we must determine "whether a defendant's conduct consisted of separate acts or a single physical act." *People v. Rodriguez*, 169 Ill. 2d 183, 186 (1996). If the defendant committed multiple acts, the court then determines whether any offenses are lesser-included offenses. *Id.* Whether a violation of the one-act, one-crime rule has occurred is a question of law, which is reviewed *de novo*. *In re Angel P.*, 2014 IL App (1st) 121749, ¶ 63.

¶ 35    Here, the petition for delinquency alleged that respondent committed aggravated robbery, robbery, and theft. All of these offenses were based on the same physical act, that is, taking an Android tablet and a wallet from Odunuga. The State concedes, and we agree, that because these offenses stemmed from the same act, the circuit court's multiple delinquency findings cannot stand. *Samantha V.*, 234 Ill. 2d at 375.

¶ 36    The proper remedy for a one-act, one-crime rule violation is to vacate the findings of delinquency for the less serious offenses and enter a single finding of delinquency and sentence on the most serious offense. *Id.* at 379-80; see also *People v. Smith*, 233 Ill. 2d 1, 20 (2009) ("judgment and sentence may be entered only on the most serious offense"). To determine the most serious offense, we compare their relative punishments. *People v. Artis*, 232 Ill. 2d 156, 170 (2009).

¶ 37    Aggravated robbery is a Class 1 felony (720 ILCS 5/18-1(c) (West 2018)) with a sentencing range of 4 to 15 years in prison (730 ILCS 5/5-4.5-30(a) (West 2018)). Robbery, as

charged in this case, is a Class 2 felony (720 ILCS 5/18-1(c) (West 2018)) with a sentencing range of three to seven years in prison (730 ILCS 5/5-4.5-35(a) (West 2018). Theft, as charged in this case, is a Class 3 felony (720 ILCS 5/16-1(b)(4) (West 2018)) with a sentencing range of two to five years in prison (730 ILCS 5/5-4.5-40(a) (West 2018)). Because aggravated robbery is the most serious offense in this case, we vacate the circuit court's delinquency findings as to robbery and theft. The sentence imposed by the circuit court remains in effect.

¶ 38    The judgment of the circuit court of Cook County is affirmed in part and vacated in part.

¶ 39    Affirmed in part; vacated in part.