2024 IL App (1st) 221934-U

No. 1-22-1934

Order filed November 25, 2024

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 20 CR 12970 |
| | ) | |
| RAUL RAMOS, | ) | Honorable |
| | ) | Geary W. Kull, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Pucinski concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's conviction for aggravated battery is affirmed where he failed to establish that he acted in self-defense.

¶ 2    Following a bench trial, defendant Raul Ramos was convicted of armed robbery (720 ILCS 5/18-2(a)(1) (West 2020)) and aggravated battery causing great bodily harm (720 ILCS 5/12-3.05(a)(1) (West 2020)). The court imposed concurrent prison terms of 8½ years for armed robbery and 5 years for aggravated battery. On appeal, defendant contends that the State failed to prove

him guilty beyond a reasonable doubt of aggravated battery because its sole witness was incredible, defendant's version of events was more plausible, and he acted in self-defense. For the reasons that follow, we affirm.

¶ 3    Defendant was charged with attempted murder, armed robbery, and aggravated battery predicated on great bodily harm, permanent disability, permanent disfigurement, and use of a deadly weapon in relation to the November 17, 2020, stabbing of Baldomero Olvera. Defendant's theory of the case was self-defense.

¶ 4    On September 15, 2022, the case proceeded to a bench trial. Olvera, with the aid of a court interpreter, testified that he worked at an auto repair shop. He hired defendant, whom he identified in court, to help clean the shop. On November 17, 2020, Olvera observed defendant in front of the shop. Defendant told Olvera to "[g]ive me $40," to which Olvera responded that he did not "have any at that moment." Defendant hit Olvera in the chest "really hard" with his hand and then left. Afterwards, Olvera walked towards the office in the back of the shop.

¶ 5    Approximately 30 minutes later, Olvera heard someone enter the back door, but did not observe anyone pass the office's window. He didn't realize that defendant had closed the back door and was in the bathroom. When Olvera opened the back door to look outside, he heard a noise behind him and felt "many" stab wounds to his shoulder area and lower back. Olvera turned, saw defendant holding a knife, and told him to "calm down" and "not to do that." Defendant then began stabbing Olvera in the face, and he "was all cut up." Olvera identified for the court a vertical scar on his right temple, a scar on the right side of his upper lip, and a linear scar on his head.

¶ 6    Olvera exited the shop, and defendant continued to stab him. Olvera grabbed defendant's hand and pushed him, which caused Olvera to fall. Defendant then mounted Olvera and stabbed

him in the head. Olvera demonstrated for the court how he fell on his hands and knees facing the ground, and how defendant placed a foot on each side of him and stabbed him in the back of the head. Olvera got away, but defendant stabbed him twice more. While Olvera was on the ground, defendant attempted to take Olvera's wallet. After defendant stabbed Olvera in the chest, Olvera pulled his wallet from his pocket and defendant "snatched it" and left. Olvera lifted his shirt, and the court noted scars to his "right, upper muscle" and under his left breast.

¶ 7    Olvera called 911 and was "passed out" when officers arrived. An ambulance transported him to a hospital, where he stayed for two weeks. The day following the incident, Olvera viewed a photo array and identified the "young man that beat [him] up." Olvera could not entirely close his right eye, and his lip hurt when he opened his mouth to eat. He lifted his shirt to show the court his scars, and the court counted approximately eight linear scars on the lower portion of his back.

¶ 8    On cross-examination, Olvera testified that defendant worked for him for approximately one year and occasionally borrowed money from him. Olvera was approximately 5'6" and 250 pounds. Defendant was "lighter" and did not weigh close to Olvera's weight. Olvera did not lock the doors to the shop after defendant struck him in the chest. No one else was in the shop during the incident.

¶ 9    Defendant did not take Olvera's wallet while Olvera was inside the shop or while defendant was stabbing him. In response to whether Olvera tried to stop defendant, he stated: "No, not until I got outside. That's when I used my hands *** to push him, and that's when I fell, *** behind the building right outside the door." Olvera further testified that he went into the alley after defendant took his wallet.

¶ 10 When questioned by the court, Olvera stated that after defendant began stabbing him, defendant said, "he was going to kill [him]." Defendant also said that Olvera could not be more intelligent than defendant and that he (defendant) had burned down Olvera's other shop.

¶ 11 Maywood police officer Lizet Ochoa testified that at approximately 10:40 a.m. on November 17, 2020, she responded to a call and observed Olvera with blood on the upper part of his body and neck and lacerations on his face, cheek, and lip. As she spoke with him, blood "spew[ed]" from his mouth and cheek.

¶ 12 Maywood police officer Jeremy Pezdek testified that he located defendant, whom he identified in court, at a gas station. Pezdek observed defendant inside a vehicle, which was later towed to the Maywood Police Department. From the vehicle, Pezdek recovered a pair of black jeans, which contained Olvera's wallet and identification, a 12-inch folding knife from the center console, and another knife from inside of a can. On cross-examination, Pezdek testified that defendant did not attempt to flee and was cooperative.

¶ 13 At the close of its case in chief, the State offered into evidence the party's joint stipulation of Dr. Purvi Patel's testimony. If called Dr. Patel, a licensed medical practitioner who supervised the trauma treatment of Olvera at Loyola Hospital, would testify that Olvera presented to the hospital with multiple stab wounds to the head, neck, abdomen, and chest, and nine stab wounds to his back. A CT scan revealed hematomas to Olvera's forehead and the back of his head. A deep stab wound to Olvera's chest extended into and collapsed his lung, causing internal bleeding. Olvera required a stent in his femoral artery to avoid vascular surgery. Due to his injuries, Olvera required plastic surgery. The stab wound to the chest would have required a "significant amount of force to inflict."

¶ 14    Defendant testified on his own behalf. He met Olvera in 2015 at Olvera's shop when he went there to purchase a tire. At that time, he noticed that Olvera carried a gun on him, "in his waistband." He first worked for Olvera between September 2017 and November 2017, on Sundays. Olvera became "very aggressive" and threatened and insulted defendant, calling him "dumb." Defendant then stopped working for him. When Olvera would threaten or push defendant, defendant would not do anything and walk away. No one else was present when these incidents occurred, and defendant did not file a police report.

¶ 15    Defendant returned to work for Olvera in May 2018 until January 2019, on Sundays. In June 2018, Olvera began name calling and displaying "aggressive behavior," including pushing defendant out of the way. Defendant would walk away. Defendant again stopped working for Olvera, but subsequently returned. In November 2018, Olvera disclosed to defendant that Olvera had "done ten years for trying to kill someone." In December 2019, Olvera retrieved a firearm from a safe, showed it to defendant, and then placed it on a table. Olvera said nothing to defendant at that time and defendant "just brushed it off." In March 2020, Olvera kicked defendant in the buttocks while defendant was changing a tire. He then told defendant to get out of the way. After that, defendant began showing up "less and less" for work.

¶ 16    On the day of the incident, defendant went to the shop to borrow money from Olvera. He arrived at approximately 9:30 a.m., and the door to the shop was open. No one else was present. Defendant carried a knife for protection and had a knife when he arrived at the shop. He did not threaten Olvera with the knife and did not demand money. Defendant approached Olvera and asked to borrow $20. Olvera refused and accused defendant of stealing rims, which defendant denied. Defendant then left.

¶ 17     Approximately 30 minutes later, defendant returned to attempt to "butter [Olvera] up." No one else was present. Defendant had a knife in his pocket when he returned. Defendant saw Olvera in the manager's office, "peeked" his head in, and told Olvera that it was him. Olvera exited the office, and defendant again asked Olvera to lend him money. Olvera again accused defendant of having the rims. Defendant was calm, but Olvera was "a little *** angry." Olvera then blocked the back door exit. Defendant placed his hand on Olvera's belly to try to get around him and exit. Olvera swung at defendant with his "left hand, then right, then left again." Olvera did not make contact with defendant, who began to back up.

¶ 18     Olvera then grabbed defendant by the collar and pulled defendant's hoodie over his head. Defendant could not see but felt himself "being tossed around here and there." Defendant then pulled his knife from his pocket because Olvera was much bigger than him and he "had to protect [him]self." Olvera continued to swing at defendant, and when defendant felt "a lot of weight on top of [him]," he began swinging the knife. He could not see Olvera and did not know if the knife made contact with Olvera. When defendant regained his sight, he "backed up."

¶ 19     Olvera then entered the alley and fell to the ground. Defendant did not know if Olvera had a firearm. When Olvera fell, he handed defendant his wallet. Defendant did not ask Olvera for his wallet and denied demanding Olvera give him his wallet. Defendant testified that he did not retrieve his knife and say, "give me your wallet or I'll kill you." Defendant grabbed the wallet and watched Olvera crawl to make sure that Olvera did not "pull anything out that could *** hurt" defendant. When Olvera fell on his back, defendant searched, but did not find a firearm on Olvera. Defendant then left but did not call the police or an ambulance.

¶ 20     Defendant further testified that he did not tell officers that he acted in self-defense, and he lied about returning to Olvera's shop a second time because he was afraid. His intention when swinging the knife was to get Olvera away from him because Olvera was attacking him. On that day, he did not attempt to forcefully take money from Olvera, did not use a weapon to forcefully take money from Olvera, and did not attempt to kill him.

¶ 21     On cross-examination by the State, defendant affirmed the following. He stabbed Olvera multiple times in the back, back of the head, chest, and face with a knife. Olvera did not have a knife or firearm at the time of the incident. On the occasion when Olvera had shown defendant the firearm, Olvera did not threaten him or state that he would shoot him. Defendant told the officers that he was not there and did not stab Olvera. Defendant also told officers that he had not been injured, only had a scratch, and Olvera never hurt him. From March 2020 to November 2020, "every once in a while," defendant would see if Olvera would let him borrow money.

¶ 22     The State recalled Olvera, who testified that he never kicked defendant. On the date of the incident, he did not punch or swing at defendant, pull his shirt over his head, or block him from exiting the shop.

¶ 23     The case was continued to October 24, 2022, for the court's ruling. The court then acknowledged the parties presented differing testimony regarding how the altercation started. In summarizing the evidence, the court recounted that defendant returned to Olvera's shop after Olvera refused to loan him money. During the altercation, defendant took Olvera's wallet and left. Defendant's credibility was "affected" by lying to the police and stating he "didn't do anything," and Olvera was not impeached "in any substantial way." The court further noted that during the altercation, Olvera was stabbed multiple times. The court found defendant guilty of aggravated

battery causing great bodily harm to Olvera, aggravated battery with a weapon, and armed robbery. The court merged the aggravated battery with a deadly weapon count into the aggravated battery causing great bodily harm count and dismissed all other counts. Defendant's motion for a new trial was denied.

¶ 24 On December 7, 2022, the court sentenced defendant to concurrent prison terms of 5 years for aggravated battery and 8½ years for armed robbery. During that same proceeding, defendant's oral motion to reconsider sentence was denied. On December 27, 2022, defendant timely filed his notice of appeal.

¶ 25 On appeal, defendant contends that his conviction for aggravated battery should be reversed because the State's evidence was insufficient to prove beyond a reasonable doubt that he did not act in self-defense where the trial court relied upon Olvera's implausible testimony.

¶ 26 When a defendant challenges the sufficiency of the evidence, the reviewing court must determine whether, viewing the evidence in the light most favorable to the State, " '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. McLaurin*, 2020 IL 124563, ¶ 22 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The State bears the burden of proving beyond a reasonable doubt every element of an offense. *People v. Gray*, 2017 IL 120958, ¶ 35. The trier of fact's role is to assess the credibility of witnesses, weigh the evidence, resolve conflicts in the evidence, and draw reasonable inferences from the evidence. *People v. Moss*, 205 Ill. 2d 139, 164 (2001). We will not retry a defendant, nor set aside a conviction unless the evidence is so unreasonable, improbable, or unsatisfactory that it raises a reasonable doubt of a defendant's guilt. *People v. Wright*, 2017 IL 119561, ¶ 70. Moreover, we will not substitute our judgment for that of the trial court. *People v.*

*Stacey*, 193 Ill. 2d 203, 209 (2000). The trier of fact's decision to accept testimony as credible is given great deference but is not conclusive and does not bind this court. *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004).

¶ 27    To sustain a conviction for aggravated battery, the State must prove beyond a reasonable doubt that defendant knowingly caused great bodily harm to another person during the commission of a battery. 720 ILCS 5/12-3.05(a)(1) (West 2020). A defendant commits battery if he or she knowingly, without legal justification, by any means causes bodily harm to an individual. 720 ILCS 5/12-3(a)(1) (West 2020). Defendant does not dispute that he stabbed Olvera and caused injury; rather, he asserts, as he did at trial, that he was justified in stabbing Olvera in self-defense. Specifically, defendant contends that he had prior knowledge of Olvera owning a firearm and that Olvera initiated the incident by pulling defendant's hoodie over defendant's head.

¶ 28    A defendant is only justified in the use of force that is intended or likely to cause great bodily harm if he "reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another." 720 ILCS 5/7-1(a) (West 2020). The elements of self-defense are: (1) unlawful force was threatened against the person, (2) the person threatened was not the aggressor, (3) the danger of harm was imminent, (4) the force used was necessary, (5) the person actually and subjectively believed a danger existed that required the use of force applied, and (6) the person's beliefs were objectively reasonable. *Gray*, 2017 IL 120958, ¶ 50. A defendant's self-defense claim fails where any one element is negated. *Id.*

¶ 29    Defendant, citing *People v. Ortiz*, 196 Ill. 2d 236, 267 (2001), first argues that the reviewing court is required to reverse a conviction based on testimony that is "improbable, unconvincing, or contrary to human experience," like that of the complaining witness. He argues

that Olvera's testimony that he stabbed Olvera more than ten times over forty dollars is not convincing where defendant had no prior history of violence. He further argues that it contradicts human experience that Olvera made almost no effort to protect himself from defendant but merely admonished him to "calm down" and "not to do that." He maintains that it is beyond human belief that someone engaged in a life-or-death struggle would make such little effort to protect himself, especially since Olvera was much larger than defendant. Defendant acknowledges that the trial court did not accept every part of Olvera's testimony. Nonetheless, he argues that given the various issues surrounding Olvera's version of the event, it was unreasonable for the trial court to find Olvera credible.

¶ 30    Initially, we note, as does defendant, that the court acknowledged the conflicting testimony of Olvera and defendant but concluded that Olvera was "not impeached in any substantial way." Although we are not inclined to believe that Olvera made no effort to defend against defendant's attacks, indeed both his and defendant's testimony bear that out, it is not our role to reweigh the evidence. Even accepting that Olvera's conduct was defensive in nature, the fact that his only weapons were his feet and hands cannot justify the force used by defendant "to protect himself."

¶ 31    Olvera testified that, when defendant returned to the shop, defendant approached Olvera from behind and stabbed him multiple times in the back, head, neck, abdomen, and chest. The stipulated testimony from Dr. Patel corroborated Olvera's testimony and demonstrated that Olvera received multiple stab wounds, including a deep wound to the chest and nine stab wounds to his back. There was no evidence that Olvera was armed. In fact, defendant testified that Olvera did not possess a firearm during the altercation. While defendant testified that Olvera pulled defendant's hoodie over his head and swung at defendant before defendant swung the knife, it does

not explain the multiple plunging wounds suffered by Olvera, including a deep wound to Olvera's chest and particularly the multiple stab wounds to his back.

¶ 32    The trier of fact is under no obligation to accept a defendant's self-defense claim but must instead "consider the probability or improbability of the testimony, the surrounding circumstances, and the testimony of other witnesses." *In re Jessica M.*, 399 Ill. App.3d 730, 737 (2010). Based on the testimony that Olvera was unarmed and did not hit or threaten defendant prior to defendant retrieving the knife and stabbing Olvera multiple times, defendant has failed to establish an imminent danger of harm that would justify his use of force. Additionally, defendant failed to explain or justify how stabbing Olvera in the back approximately nine times and in the face, chest, and shoulder was necessary when Olvera was unarmed and at times attempting to escape or on the ground. Because defendant failed to satisfy two of the elements of self-defense, defendant's self-defense claim fails. *Gray*, 2017 IL 120958, ¶ 50.

¶ 33    Even so, defendant maintains that his testimony is more aligned with human experience and the evidence presented at trial. He points to the fact that he conceded unfavorable facts during his initial description of the altercation. Further, he offers that his admission to authorities that Olvera did not possess a gun makes his overall testimony more believable than Olvera's.

¶ 34    Defendant is essentially requesting that we reweigh the trial evidence and draw different credibility conclusions as to the version of events. It is not within our province to do so. As noted, it is the trier of fact's role to assess the credibility of witnesses, weigh the evidence, resolve conflicts in the evidence, and draw reasonable inferences from the evidence. *Moss*, 205 Ill. 2d at 164. As trier of fact, the court can choose to accept or reject all or part of a witness' testimony. *People v. Joiner*, 2018 IL App (1st) 150343, ¶ 62. The court heard the evidence and, given its

finding that defendant was guilty of aggravated battery causing great bodily harm, necessarily credited Olvera's testimony over defendant's in regard to his claim that he stabbed Olvera in self-defense. See *People v. Little*, 2018 IL App (1st) 151954, ¶ 54 (the positive testimony of a single credible witness is sufficient to support a conviction). We will not substitute our judgment for that of the trial court. *Stacey*, 193 Ill. 2d at 209. Moreover, this court will not reverse a conviction merely because a defendant alleges that a witness's testimony was not credible and his version was more plausible. *People v. Robinson*, 2015 IL App (1st) 130837, ¶ 60.

¶ 35    Defendant additionally argues that Olvera's aggression, that is, attempting to hit defendant, pulling his sweatshirt over his head and wrestling with him, gave defendant the right to act in his own defense. That aggression, he maintains, was justified, especially when considering Olvera's capacity for violence. As an example, defendant points to the fact that Olvera had previously shown him a gun and at the time of the altercation, with his sweatshirt over his head, he was unable to see if Olvera was then armed. Defendant cites *People v. Estes,* 127 Ill. App. 3d 642 (1984), for the proposition that his aggression towards Olvera was prompted by Olvera's aggression and was justified because he could not see with his shirt pulled over his head.

¶ 36    The facts in *Estes* are distinguishable. In *Estes*, the defendant was convicted of voluntary manslaughter arising from the shooting death of her husband. 127 Ill App. 3d at 643. On appeal, she argued that the State failed to prove beyond a reasonable doubt that she did not act in self-defense. *Id.* at 651. The State argued that because the decedent was not armed, the defendant's use of deadly force was not justified. *Id.* at 651. Further, the State argued, because the decedent was not wearing a coat, he could not have concealed a weapon on his person. *Id.* at 652. In rejecting the State's arguments, the reviewing court noted that without her glasses, the defendant's vision

was extremely limited. *Id.* Significantly, a loaded weapon was, in fact, found in the car from which the deceased had earlier exited, and it was the same weapon with which the decedent had previously threatened the defendant. *Id.*

¶ 37    First, although Olvera had previously shown defendant a gun, unlike in *Estes*, there is no testimony that he ever threatened its use. Second, unlike in *Estes*, no gun was found at or near the scene of this altercation. Third, unlike in *Estes* and that defendant's limited vision, even accepting that defendant's sweatshirt was pulled over his head for a time, there is no testimony that it remained so throughout the duration of the incident.

¶ 38    Having thoroughly reviewed the record in this case, we find that defendant's self-defense theory fails. The trial evidence was sufficient to establish that defendant did not act in self-defense when he repeatedly stabbed Olvera from behind and continued as Olvera attempted to escape. Additionally, we do not find that the evidence and reasonable inferences therefrom, viewed in the light most favorable to the State, were so "unreasonable, improbable, or unsatisfactory that a reasonable doubt of the defendant's guilt remain[ed]" as to the offense of aggravated battery. *Hines*, 2021 IL App (1st) 191378, ¶ 31; see *People v. Swenson*, 2020 IL 124688, ¶ 35 (all reasonable inferences are viewed in the light most favorable to the State).

¶ 39    For the reasons stated, we affirm defendant's conviction for aggravated battery.

¶ 40    Affirmed.